DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, BFG Federal Credit Union ("BFG") and Telecommunity Credit Union ("Telecommunity") appeal from a judgment of the Summit County Court of Common Pleas that granted judgment for each plaintiff on its professional negligence claim against Defendant-Appellee Hausser and Taylor, LLP ("Hausser and Taylor"), but granted directed verdicts against BFG and Telecommunity on other claims against Hausser and Taylor and claims against the remaining defendants, Judy Andrews, Leslie Bumgarner, Steven Grindle, and Paul Mercer ("the director defendants"). The director defendants cross-appeal from the trial court's denial of their motion for summary judgment. We affirm.
 {¶ 2} Because we review this case regarding the propriety of directed verdicts for the defendants, the facts will be construed in favor of BFG and Telecommunity. BFG and Telecommunity[1]
are both credit unions, nonprofit lending institutions, each of which was approached during the 1990s with an offer to become a member of CU Lease, Inc. ("CU Lease"). CU Lease was a non-profit cooperative organization comprised of individual credit union members, which was established in 1993 to provide automobile leasing service to its members. During the early the 1990s, the option of leasing an automobile, as opposed to purchasing it and financing with a loan, was growing in popularity and the credit unions did not want to lose this potential portion of the financial market. BFG had projected that, by 2000, leasing might account for fifty percent of new car financing. Because their competitors were offering the option of leasing, BFG and Telecommunity wanted to offer that option to their members.
 {¶ 3} Both BFG and Telecommunity explored the option of joining a cooperative because, as credit unions, they were not licensed to make leases. One of the primary reasons that BFG and Telecommunity decided to join CU Lease was that it offered a program with residual value insurance, insurance that would protect against declines in projected market value at the end of the lease. The residual value was the projected value, with regular wear and tear, for each vehicle at lease end and was based on the projected vehicle values published in the Auto Lease Guide.
 {¶ 4} In addition to an initial capital investment, both BFG and Telecommunity executed written contracts with CU Lease. The agreements provided that CU Lease would purchase the vehicles; execute the leases, including collecting and holding the initial payment, security deposit, and down payment, if any; and then sell the leases to the individual credit unions. The agreements also provided that CU Lease would maintain residual value insurance on each leased vehicle in a closed-end lease, to protect against loss resulting from an unexpected decline in a vehicle's market value at the end of the lease; and that CU Lease would hold the security deposits in a segregated account, to be returned to either the lessee of the vehicle or the individual credit union at lease end.
 {¶ 5} CU Lease never achieved the financial success that its members had anticipated, due to a variety of problems, including that its volume of leases never reached the levels that it had projected and that the leasing industry in general was sustaining unexpected losses on vehicles at the end of many leases because the vehicles could not be sold for the value that had been projected at the beginning of the lease. Because automobile leasing had grown in popularity, many cars were coming off leases by the late 1990s. As a result, the used car market was overrun with excess supply, causing a decline in the market value of many used vehicles.
 {¶ 6} CU Lease sustained additional losses because it had not obtained residual value insurance on many of the leased vehicles. Although the parties later disputed whether CU Lease or the individual credit unions were responsible for bearing the residual value losses, CU Lease apparently absorbed these losses during its years of operation. Consequently, BFG and Telecommunity were unaware, until after CU Lease was dissolved, that there was no residual value insurance on many of the vehicles leased to their members.
 {¶ 7} During 1997, in an attempt to increase its volume of leases, CU Lease acquired the leased assets of Member's Choice, a similar leasing organization that was formed by Michigan credit unions. The assets acquired, however, were worth much less than the Member's Choice liabilities that CU Lease also acquired. Because CU Lease believed that there was great potential for future leasing business to flow from this acquisition, however, it valued the "goodwill" of the Member's Choice business at $1.9 million and included the goodwill as an asset on its financial statements.
 {¶ 8} Although the Member's Choice acquisition did increase the volume of leases, it did not realize anywhere near the increased business that had been hoped. For that reason, it was the position of BFG and Telecommunity that the value of the Member's Choice "goodwill" had been greatly overvalued on the financial statements and that it should have been adjusted downward over time. According to BFG and Telecommunity, by continuing to include $1.9 million worth of goodwill on the CU Lease financial statements, the independent auditors and the management of CU Lease overstated the assets of CU Lease and concealed from its members the financial reality that CU Lease was insolvent.
 {¶ 9} During February 2000, the members of CU Lease voted to dissolve the cooperative. After CU Lease was dissolved, BFG and Telecommunity sustained losses because they were forced to find and compensate new lease servicing companies for their existing leases and bore additional expenses to transfer the leases. They also incurred losses due to the lost security deposits and because there was no residual value insurance on many of the vehicles that had been leased by their members.
 {¶ 10} BFG and Telecommunity ("the plaintiffs") filed this action on May 22, 2002,[2] asserting claims against Hausser and Taylor, the certified public accounting firm that had performed the annual audits of the financial statements of CU Lease, for fraud and accounting malpractice. The plaintiffs also asserted claims against the director defendants for fraud and breach of fiduciary duty.[3] The plaintiffs' claims were based on allegations that the defendants knew about the poor financial condition of CU Lease, including that the security deposits were not being held but were being spent in the operations of the business, that many leased vehicles were not covered by residual value insurance, and that the value of the Member's Choice goodwill had been greatly overstated which was concealing the fact that the company was insolvent. The plaintiffs further alleged that the defendants either deliberately misstated or concealed the truth about these facts to the plaintiffs, causing them to continue to sustain financial losses.
 {¶ 11} The director defendants later moved for summary judgment, contending that the plaintiffs' damage claims against them were precluded by R.C. 1729.23. Specifically, they asserted that the plaintiffs could not meet the evidentiary requirements of R.C. 1729.23(C)(1), which authorized the plaintiffs to hold the directors personally liable for damages only if they could present clear and convincing evidence that the directors had acted with deliberate intent to injure CU Lease or that they had acted with reckless disregard for the best interests of CU Lease. The trial court denied the motion for summary judgment and the case eventually proceeded to trial.
 {¶ 12} At the close of the plaintiffs' case, all of the defendants moved for directed verdicts. The trial court granted a directed verdict to Hausser and Taylor and to the director defendants on the plaintiffs' fraud claims. At the close of all the evidence, the trial court granted the motion for directed verdict of the director defendants on the plaintiffs' only remaining claims against them, breach of fiduciary duty.
 {¶ 13} The case went to the jury solely on the plaintiffs' claims against Hausser and Taylor for accounting malpractice. The trial court determined that the statute of limitations was four years from the filing of the complaint in this case on May 22, 2002. Consequently, it instructed the jury that it could consider evidence of Hausser and Taylor's accountancy dating back only to May 22, 1998.
 {¶ 14} The jury returned a verdict for each plaintiff against Hausser and Taylor, and found that BFG sustained damages of $2,037.00, Telecommunity's damages were $2,312.00, and that each plaintiff had also been fifty percent negligent. The trial court entered judgment for each plaintiff against Hausser and Taylor and awarded BFG damages of $1,018.50 and Telecommunity damages of $1,156.00.
 {¶ 15} The plaintiffs appeal and raise four assignments of error. The director defendants cross-appeal and raise one assignment of error.
 ASSIGNMENT OF ERROR I
"The trial court erred in granting Appellee Hausser Taylor's motion for directed verdict on [the plaintiffs'] claims for intentional misrepresentation."
 {¶ 16} The plaintiffs contend that the trial court erred in granting a directed verdict to Hausser and Taylor on the plaintiffs' claims against them for fraud. As we recently explained in Burns v. Rudolph, 9 Dist. No. 22780,2005-Ohio-6918, the elements of fraud are as follows:
"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Id. at ¶ 23, citingRuss v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49.
 {¶ 17} The standard for granting a directed verdict is set forth in Civ.R. 50(A)(4), which authorizes the trial court to grant a directed verdict only when:
"after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 18} "[T]he court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.'" Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 284-285, quoting Hawkinsv. Ivy (1977), 50 Ohio St.2d 114, 115.
 {¶ 19} The plaintiffs' fraud claims against Hausser and Taylor were based on allegations that Hausser and Taylor had made material misrepresentations to them through its annual audits of the financial statements of CU Lease. The plaintiffs focused on three areas of alleged misstatements or failures to disclose information to CU Lease members: (1) that security deposits were not being held in a segregated account but were being used in the operation of the leasing business; (2) that CU Lease had failed to obtain residual value insurance on many of the leased vehicles; and (3) that CU Lease had overstated the value of the Member's Choice goodwill and failed to adjust the figure downward over time, which served to conceal its growing insolvency.
 {¶ 20} In their appellate brief, the plaintiffs focus their argument primarily on the three of the six elements of fraud: misstatement, materiality, and knowledge of its falsity. They point to evidence that the Hausser and Taylor audits constituted material misstatements or concealment of facts that auditors had a duty to disclose to investors. Although the plaintiffs also assert that Hausser and Taylor acted with the requisite state of mind to commit fraud, and attempt to point to supporting evidence, there simply was no evidence presented by the plaintiffs to support even an inference that Hausser and Taylor knew that its audits were inaccurate or that it acted with intent to mislead investors.
 {¶ 21} In fact, the plaintiffs' own expert, a certified public accountant who offered the plaintiffs' primary evidence against Hausser and Taylor, testified that the audits performed by Hausser and Taylor were inadequate, not fraudulent. She repeatedly stated during her testimony that Hausser and Taylor had failed to obtain "sufficient competent evidential matter." She opined that, due to the incomplete information upon which it based its audits, Hausser and Taylor had conducted substandard audits that failed to comply with generally accepted auditing standards. Her testimony focused on the lack of knowledge that Hausser and Taylor had about the true financial condition of CU Lease and its failure to detect the financial problems of the company. Although her testimony may have supported a conclusion that Hausser and Taylor should have known that its audits were incomplete, it did not support a conclusion that Hausser and Taylor had actual knowledge that it was misstating or concealing the truth about the financial condition of CU Lease or that it acted in utter disregard for the truth. Moreover, this evidence is totally devoid of any suggestion that Hausser and Taylor concealed or misstated financial information about CU Lease with an intent to mislead its members.
 {¶ 22} Construing the evidence most strongly in favor of the plaintiffs, Hausser and Taylor's audits of CU Lease were incomplete and inaccurate and it should have known that. The plaintiffs' evidence supported a negligence claim, but not a claim for fraud. Consequently, the trial court did allow the plaintiffs' accounting malpractice claims to go to the jury. There was no evidence presented from which a reasonable factfinder could conclude that Hausser and Taylor knowingly reported inaccurate financial information about CU Lease or that it acted with intent to mislead CU Lease members. Consequently, the first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in granting Appellees/Cross-Appellents Directors motion for directed verdict on [the plaintiffs'] claims for intentional misrepresentation."
 ASSIGNMENT OF ERROR III
"The trial court erred in granting Appellees/Cross-Appellents Directors motion for directed verdict on [the plaintiffs'] claims for breach of fiduciary duty."
 {¶ 23} The second and third assignments of error will be addressed together because they are related. The director defendants moved for directed verdicts on all claims against them. They asserted, among another things, that their personal liability for their acts or omissions as directors of a cooperative was limited to the grounds set forth in R.C. 1729.23
and that the plaintiffs had failed to meet the requirements of the statute.
 {¶ 24} R.C. 1729.23(C)(1) provides, in relevant part:
"[A] director is liable in damages for any act that the director takes or fails to take as director only if it is proved, by clear and convincing evidence, in an action brought against the director that the act or omission of the director was undertaken with a deliberate intent to cause injury to the association or was undertaken with a reckless disregard for the best interests of the association."
 {¶ 25} Although the plaintiffs contend that R.C. 1729.23 does not apply to this situation and that they have a common law right to bring an action against the individual directors for breach of fiduciary duty, they cite no legal authority for that proposition. None of the cases that they cite involved actions that sought to hold directors personally liable for money damages based on allegations that they breached their fiduciary duties.
 {¶ 26} The plaintiffs have failed to convince us that they had any right to seek damages from the defendant directors outside of the parameters of R.C. 1729.23(C)(1). Thus, the plaintiffs could survive a motion for directed verdict only if they presented evidence from which a reasonable juror could conclude that the defendant directors acted with deliberate intent to cause injury to CU Lease or with reckless disregard for the best interests of CU Lease.
 {¶ 27} The alleged fraudulent statements made by the director defendants were the same as those alleged to have been made by Hausser and Taylor: the audited financial statements of CU Lease. The evidence is undisputed that the defendant directors did not prepare the financial statements, nor did they participate in the audits. It is their approval of the audited financial statements and dissemination to members of CU Lease that is at issue.
 {¶ 28} The plaintiffs presented evidence that the directors had knowledge of some of the facts underlying the alleged misstatements such as that CU Lease was using the security deposits in its operations, that it was on the verge of insolvency and eventually became insolvent, and that its valuation of the Member's Choice goodwill had been called into question. According to the minutes and notes from some meetings of the board of directors, there had been discussion at meetings attended by the director defendants about some of these issues: the propriety of using the security deposits in the operations of CU Lease, whether CU Lease would run out of capital, and whether its valuation of the Member's Choice goodwill was appropriate. These discussions also encompassed whether the board of directors had an obligation to provide members with additional information and whether the financial statements accurately disclosed the financial condition of CU Lease.
 {¶ 29} In their argument that there was sufficient evidence to take the fraud claims to the jury, the plaintiffs focus primarily on isolated statements made at some of the board meetings, rather than looking at the evidence in total. Although there had been statements made that called these issues into question, the evidence further demonstrated that, to address these concerns, the directors sought legal advice from CU Lease legal counsel and financial advice from Hausser and Taylor. Rather than ignoring their concerns and acting in reckless disregard for the best interests of CU Lease, the directors attempted to take appropriate action. The directors recognized that none of them was a financial or legal expert so they sought the opinions of those who were. Both legal counsel and Hausser and Taylor assured the directors that the financial statements were proper and that the financial condition of CU Lease had been adequately disclosed to its members.
 {¶ 30} Although the plaintiffs presented evidence that the legal and financial advice that the directors received was incorrect, they failed to present any evidence that the directors knew or should have known that the advice was unsound. At worst, the director defendants may have been negligent for not questioning the advice further, but there certainly was no evidence that they acted with any intent to injure CU Lease or in reckless disregard of its best interests.
 {¶ 31} Consequently, the trial court did not err in granting the director defendants directed verdicts on all of the plaintiffs' claims against them. The second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred in determining when the statute of limitations for [the plaintiffs'] claims for accounting malpractice should run."
 {¶ 32} The plaintiffs contend that the trial court improperly applied the statute of limitations to their accounting malpractice claims by limiting their claims to four years before the complaint was filed. The trial court did not limit the plaintiffs' presentation of evidence to that timeframe, however, but applied the statute of limitations to their claims through an instruction to the jury. The trial court instructed the jury that, for purposes of the accounting malpractice claims, it could not consider any accountancy performed before May 22, 1998, four years before the complaint was filed. The plaintiffs contend that this instruction was improper.
 {¶ 33} Civ.R. 51(A) provides, in relevant part, that "a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Although the trial judge stated on the record that the parties would meet with the judge to discuss the jury instructions outside the hearing of the jury, if such a discussion did occur, it was not made a part of the record.
 {¶ 34} There is nothing in the record to indicate that the plaintiffs raised any objections to the instructions given to the jury or that they even requested that the trial court give a different instruction on the statute of limitations. The plaintiffs cannot argue now that the jury was not correctly instructed on the law, as they failed to preserve this issue for appellate review. The fourth assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR
"The trial court erred in overruling the May 6, 2003 Motion for Summary Judgment of Cross-Appellants Andrews, Bumgarner, Grindle, and Mercer."
 {¶ 35} The cross-appellants, the defendant directors, who were ultimately granted directed verdicts on all of the plaintiffs' claims against them, contend that the trial court erred in failing to grant them summary judgment prior to the trial.
 {¶ 36} "An appeal lies only on behalf of the party who is aggrieved by the judgment." Sampson v. Hughes (July 22, 1999), 4th Dist. No. 98CA2435, at 3. The sole purpose of an appeal is to provide the appellant an opportunity to seek relief in the form of a correction of errors of the lower court that injuriously affected him. Petitioners v. Bd of Twp. Trustees (1965),4 Ohio App.2d 171, 176.
 {¶ 37} Although the director defendants may have been aggrieved by the trial court's interlocutory order that denied their motion for summary judgment, they ultimately prevailed on the same issues raised in their motion for summary judgment when the trial court granted them a directed verdict on all claims against them. At the time of the final judgment, they were not aggrieved parties and, consequently, have no right to appeal.
 {¶ 38} The only manner in which the director defendants were aggrieved is that they were not granted judgment in their favor as soon as they would have liked. The director defendants implicitly assert that they should have been granted summary judgment rather than a directed verdict so that they would have been spared the time and expense of defending themselves in a lengthy trial. We cannot undo the fact that they had to go to trial and defend themselves, however. Because we cannot provide them any relief, any ruling on their cross-assignment of error would be purely advisory and outside the role of this appellate court. An appellate court is not required to rule on a question of law that cannot affect matters at issue in a case. CarrollCty. Bur. of Support v. Brill, 7th Dist. No. 05 CA 818,2005-Ohio-6788, at ¶ 32, citing Miner v. Witt (1910),82 Ohio St. 237, 238. There is nothing that we could do to provide relief to the director defendants on remand.
 {¶ 39} Accordingly, the cross-assignment of error will not be addressed.
 {¶ 40} The assignments of error are overruled. The cross-assignment of error will not be addressed. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to the parties equally.
Carr, J. Whitmore, J. concur.
[1] Although Telecommunity was known at that time as Akron Telephone Credit Union, we will refer to it throughout this opinion as Telecommunity, its current name.
[2] It is not disputed that the plaintiffs previously filed, and then voluntarily dismissed, another action against these defendants, but none of those filings are in the record before us. Consequently, although the parties make references to that prior action, those facts are not before us.
[3] Although there were additional parties and claims in this case, for the sake of clarity, we will limit our recitation of the facts to the parties and claims that are at issue on appeal.