DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} The legal custody of two minor children is at issue in this case. The case arose when the trial court placed the children in the temporary custody of their grandmother, following the incarceration of their mother on charges of aggravated murder, and the subsequent incarceration of their father on charges of child endangerment. Following unsuccessful case planning efforts directed toward reunification, the trial court granted legal custody to the maternal grandmother. The father has challenged the trial court's award of legal custody, claiming that it was in the children's best interest to be placed in his care and that he should be granted additional time to pursue his case plan. This Court has concluded that the *Page 2 
trial court did not abuse its discretion in denying the father's motion for an extension of temporary custody or in placing the children in the legal custody of the grandmother.
 I. {¶ 2} Lachonna T., the mother of the two children, had custody of S.N., born February 14, 2001, and L.N., born February 26, 1999, until May 2005 when she was incarcerated on charges of aggravated murder. Because of her incarceration, the mother took the children to live with their father. She was subsequently convicted and sentenced to a term of seven years in prison. On July 28, 2005, the children were found to have welts on their legs as a result of physical discipline administered by their father. Police removed the children from the father's home pursuant to Rule 6 of the Ohio Rules of Juvenile Procedure, and charged the father with child endangering. He was eventually sentenced to six months incarceration. The children were taken to stay with their maternal grandmother, Shirley Nealey.
 {¶ 3} On September 14, 2005, the Summit County Children Services Board filed complaints in juvenile court. The agency alleged that the two children were dependent and sought temporary custody. Children Services became involved at this time because Ms. Nealey reportedly had not received the financial support she expected from the father and could no longer care for the children *Page 3 
without assistance. She was having financial problems as well as difficulty getting the children to and from school.
 {¶ 4} The case proceeded to adjudication, and the trial court found the children to be dependent. A case plan was developed which required the father to: (1) establish paternity; (2) participate in a parenting program; and (3) visit with the children once an alleged no-contact order was lifted. The mother was to keep in contact with the children through telephone calls and letters.
 {¶ 5} At the subsequent dispositional hearing, on December 8, 2005, Children Services' caseworker, Octavia Durst, testified that the children began counseling on November 1, 2005, and were doing well in their placement with Ms. Nealey. Ms. Durst reported that neither child wanted to visit with the father and both had expressed concern about their father beating them.
 {¶ 6} The father also testified at the dispositional hearing. He explained that he had disciplined the children because S.N. had repeatedly defecated on the floor. As a result of that behavior, he had made arrangements for both children to be involved in counseling. In addition, the father testified that he had completed parenting classes. The father added that he was concerned that Children Services did not promptly follow through with counseling for the children, because that caused him to have to wait for an additional evaluation before he could visit with the children. *Page 4 
 {¶ 7} Based on the testimony before him at that point, the magistrate found that Children Services had not made reasonable efforts to facilitate the return of the children to their father because the agency did not timely involve the children in counseling. Moreover, he also found that the agency had misinterpreted the criminal court order which actually gave Children Services discretion as to the father's visitation. The agency had wrongly construed the order as barring all contact by the father. The magistrate concluded that Children Services' actions had unnecessarily delayed the potential access of the father to his children.
 {¶ 8} It is not clear from the record, however, that there was actually any delay in the father's ability to participate in visitation. The children were removed from the father's home on July 28, 2005, and he was subsequently charged, convicted and sentenced to six months incarceration for child endangering. The juvenile court ordered visitation instituted on December 22, 2005.
 {¶ 9} The magistrate amended the case plan objectives to additionally require the father to: (1) maintain stable housing and income; (2) comply with the requirements of the criminal court regarding his conviction; and (3) participate in the children's counseling when appropriate. Following the hearing, the trial court ordered the children to be placed in the temporary custody of Ms. Nealey.
 {¶ 10} Over the course of the next several review hearings, the magistrate expressed growing concern about the father's housing and his failure to permit the *Page 5 
Children Services' caseworker and the guardian ad litem to enter his home. The magistrate indicated that the father was obligated to demonstrate that his housing was satisfactory. The magistrate also noted testimony that the father continued to have anger issues and had been "confrontational" with his service providers. In addition, the father was removed from the Children Services' visitation list because he had missed three consecutive visits. The magistrate found that Children Services' more recent efforts towards reunification were reasonable.
 {¶ 11} Eventually, Children Services moved for a change of the dispositional order from temporary custody in Children Services to legal custody in Ms. Nealey. For his part, the father moved for a six-month extension of temporary custody. A hearing was conducted on both motions. Testimony was taken from caseworker Durst; Ms. Nealey; and Courtney Jones, the guardian ad litem. Neither parent was present at the hearing. The father's attorney was present and reported that he had no knowledge of the whereabouts of his client. At the conclusion of the hearing, the magistrate denied the father's motion for an extension of temporary custody and granted legal custody to Ms. Nealey.
 {¶ 12} The father timely filed objections to the magistrate's decision. He objected to: (1) the finding that legal custody to Ms. Nealey was in the best interest of the children; (2) the failure to find that the father had made significant progress on his case plan; and (3) the denial of the father's motion for a six-month extension. *Page 6 
 {¶ 13} On December 21, 2006, the trial judge overruled the father's objections, adopted the magistrate's decision, and entered an independent judgment, awarding legal custody to Ms. Nealey and denying the father's motion for a six-month extension of temporary custody. The trial court found that, although the father finished a parenting class, established paternity, and refrained from further criminal activity, he had failed to significantly comply with the case plan as a whole. Specifically, the trial court pointed to the father's failure to obtain and maintain appropriate housing, his refusal to allow Children Services or the guardian ad litem into his home, and his failure to attend visitation with the children for several months. In addition, the court cited reports by the parenting evaluator that the father lacked insight into how his personality prevented him from working with service providers toward reunification and reports by the children's counselor that the father was confrontational and minimized the need for counseling. The trial court also found that the father had not applied the concepts he was to have learned in parenting classes.
 {¶ 14} By the same token, the trial court found that the children had bonded to Ms. Nealey. The children were, by all accounts, happy and doing well in Ms. Nealey's care. She had adequate space for them and was able to provide for their basic needs. The court found that the children did not want to see their father, but noted that Ms. Nealey agreed to honor the residual parental rights of the parents as long as their involvement remained in the best interests of the children. *Page 7 
 {¶ 15} The father has appealed from the judgment, which denied his motion for a six-month extension of temporary custody and awarded legal custody to Ms. Nealey. He has assigned two errors for review.
 II. A. {¶ 16} In his first assignment of error, the father has asserted that the trial court incorrectly denied his motion for a six-month extension of temporary custody. The decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.41.5(D)(1) and (2). Such a decision will be reversed only upon a finding of an abuse of discretion. In re P.B., Summit App. No. 23276, 2006-Ohio-5419, at 38.
 {¶ 17} "R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension."In re P.B., 2006-Ohio-5419, at ¶ 36. See, also, R.C. 2151.41.5(D)(1) of the Revised Code. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'"In re Adoption ofHolcomb, 18 Ohio St. 3d 361, *Page 8 
368 (1985) (quoting Cross v. Ledford, 161 Ohio St. 469, paragraph three of the syllabus (1954)).
 {¶ 18} In his appellate argument, the father has contended that the children had been placed with Ms. Nealey during temporary custody and were doing well in that placement. He has reasoned that an extension would have been in the best interests of the children because the children could have remained in the same setting, and he could have had additional time to complete his case plan and reestablish a relationship with the children. The father has also asserted that he had made "significant progress" on his case plan. He has pointed to the fact that he established paternity, completed a parenting class, completed a parenting evaluation, only missed "maybe" six visits, and avoided further criminal involvement. He has claimed that he had an established residence.
 {¶ 19} After visitation was ordered in December 2005, the father's attendance was not consistent and his ability to participate was eventually terminated because he missed three visits in a row. His last visit was at the end of May or early June 2006. He failed to contact the agency to reinstitute visitation until August 1, 2006, shortly before the hearing on legal custody and his motion for a six-month extension. In addition, the parenting evaluator indicated that the father was confrontational during his assessment, and she concluded that the father's lack of insight prevented him from working with service providers toward reunification. Furthermore, the father's claims of an established residence were *Page 9 
unsubstantiated, despite the fact that the trial court advised him that he was obligated to demonstrate the appropriateness of his residence to Children Services' caseworkers and to the court. The father also failed to verify his employment.
 {¶ 20} The father has argued he had substantially completed his case plan and there was reasonable cause to believe that reunification could take place within the next six months. He has claimed he needed only to permit Children Services to investigate his residence and spend additional time visiting and bonding with his children.
 {¶ 21} The father's argument on this point ignores the fact that he had made little or no meaningful progress in these areas or others over the course of the eight months following his release from jail. It also fails to take note of the fact that the father did not attend the decisive hearing on the motion for legal custody and the motion for a six-month extension, as well as the adjudicatory hearing, the February 2006 review hearing, and the June 2006 review hearing. The father did attend three early hearings: the shelter care hearing, the dispositional hearing, and the December 2005 review hearing. The record indicates that the father's attorney repeatedly expressed an inability to contact the father and a lack of knowledge of his whereabouts.
 {¶ 22} Upon consideration, this Court concludes that the father has failed to demonstrate an abuse of discretion by the trial court in denying his motion for a six-month extension. As set forth more fully below, the evidence that was before *Page 10 
the trial court fully supported the conclusion that an extension of temporary custody was not in the children's best interests, but, rather, that their interests were best served by an award of legal custody to Ms. Nealey. The evidence also supports the conclusion of the trial court that the father made no meaningful progress on his case plan, and that there was no reason to believe that the children would be reunified with him within the period of an extension. Accordingly, the first assignment of error is overruled.
 B. {¶ 23} The father has next argued that the trial court abused its discretion by awarding legal custody to a relative. In making this claim, he has asserted that the trial court ignored his fundamental liberty interest in the care, custody, and management of his children and that he had made significant case plan progress.
 {¶ 24} As to the father's assertion regarding his fundamental liberty interest in the care, custody, and management of his children, it is important to note that this is not a case involving the permanent custody of children, but rather concerns an award of legal custody. The Ohio Supreme Court has recently explained that "[a]n award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities."In re C.R.,108 Ohio St. 3d 369, 2006-Ohio-1191, paragraph one of the syllabus. The father in this case retained those residual rights, privileges, and responsibilities. In a proper case, a motion for a change of custody could be filed in the future. Id. at ¶ 17 and ¶ 23. *Page 11 
Nevertheless, an award of legal custody to a non-parent is a serious matter which cannot be taken lightly, and the parent is entitled to the full protection of his fundamental liberty interest in the care, custody, and control of his children. See In re Hockstok,98 Ohio St. 3d 238, 2002-Ohio-7208, at ¶ 16.
 {¶ 25} The interest of parents in the care, custody, and management of their children is protected by the Due Process Clause of theFourteenth Amendment to the United States Constitution and by Article I, Section 16, of the Ohio Constitution. Santosky v. Kramer, 455 U.S. 745, 753
(1982); In re Schaeffer Children, 85 Ohio App. 3d 683, 689-690 (1993). This means that any action by the state that affects a parent's custodial rights to his or her children must be conducted pursuant to procedures that are fundamentally fair. Santosky, 455 U.S. at 754;Schaeffer, 85 Ohio App. 3d at 689-690. Ohio has attempted to ensure that those interests are protected by relevant statutes and case law, and has provided that a parent's custodial rights may only be curtailed upon careful satisfaction of the prescribed procedures and standards. The father has asserted that his fundamental liberty interest was ignored by the trial court in coming to the conclusions that it did, but he has not specified any fundamentally unfair procedures that were utilized in this case. Consequently, he has not demonstrated that the trial court violated his fundamental liberty interest in the custody of his children. *Page 12 
 {¶ 26} The father has also asserted that he made significant progress on his case plan, and that he should have, therefore, retained the custody of his children. The decision to grant or deny a motion for legal custody is within the sound discretion of the juvenile court.In re M.S., Summit App. No. 22158, 2005-Ohio-10, at ¶ 11. This Court will not reverse the decision of the juvenile court absent an abuse of discretion. Id.
 {¶ 27} Although the statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, this Court has previously indicated that the trial court must base such a decision on the best interest of the child. In re S.J., Summit App. No. 23199,2006-Ohio-6381, at ¶ 32 (citing In re N.P., Summit App. No. 21707,2004-Ohio-110, at ¶ 23). See also In re T.A., Summit App. No. 22954,2006-Ohio-4468, at 16. "In legal custody cases, trial courts should consider all factors relevant to the best interest of the child."In reS.J., 2006-Ohio-6381, at ¶ 34. This Court has also indicated that the factors stated in Section 2151.41.4(D) of the Revised Code may provide some guidance in making an award of legal custody. Id. at ¶ 32. Those factors include:
 (1)The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2)The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 13 
 (3)The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 (4)The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
R.C. 2151.41.4(D)(1-4).
 {¶ 28} The father has argued that he was in "significant" compliance with his case plan and that, therefore, the award of legal custody to Ms. Nealey was an abuse of discretion. As discussed above, this Court has determined that the father did not significantly comply with his case plan. Moreover, case plan compliance will only be relevant to a determination of legal custody insofar as it affects a consideration of the best interests of the children. Therefore, our consideration is directed to factors relevant to the best interests of the children.
 {¶ 29} The father has argued that he had "an established relationship" with the children because they were in his care prior to removal. That period of time totaled only two months, however, and ended with an incident of child abuse. There is no evidence of any relationship, positive or negative, between the father and the children while the children were living with their mother. Later, when the children were placed with Ms. Nealey, they did not want to be alone with the father. At the same time, the children were happy and doing well in their placement with Ms. Nealey. Ms. Nealey also has custody of an older sibling of *Page 14 
these children and all the siblings were thus able to continue their relationships with one another. Ms. Nealey agreed to let both parents continue to see the children, as long as it remained in the children's best interests.
 {¶ 30} The trial court heard testimony that the children preferred living with Ms. Nealey and did not want to go with their father. The caseworker believed Ms. Nealey was best able to provide for the children. Further, the guardian ad litem stated her belief that it would be in the best interests of the children to be placed in the legal custody of Ms. Nealey.
 {¶ 31} The record reveals that the children were in the custody of their mother until May 2005. They stayed with their father for approximately two months before they were removed by the police. The children were then placed with Ms. Nealey and have remained there for fourteen months. The father's visitation may have been delayed slightly by the actions of Children Services, but, after it was instituted, he "missed visits sporadically" and, at one point, was terminated because he missed three visits in a row. According to the caseworker, the father paid attention to the children during visits, but was very "rigid" and his affection appeared to be "superficial." The guardian ad litem observed nothing inappropriate during her two visits.
 {¶ 32} The fourth best interest factor requires a consideration of the children's need for a legally secure permanent placement. There was testimony before the trial court indicating that the children needed permanency. Ms. Nealey *Page 15 
agreed to keep the children on a long-term basis and, thereby, provide them with the stability and permanence they needed.
 {¶ 33} Based upon a careful review of the record, this Court determines that the trial court did not abuse its discretion in concluding that it was in the best interests of the children to be placed in the legal custody of Ms. Nealey. The father's second assignment of error is overruled.
 III. {¶ 34} The father's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 16 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 SLABY, P. J. MOORE, J. CONCUR *Page 1