[Cite as *In re A.T.*, 2011-Ohio-5222.]

STATE OF OHIO    )     IN THE COURT OF APPEALS
          )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE  )

IN RE: A.T.          C.A. No.  11CA0024

                APPEAL FROM JUDGMENT
                ENTERED IN THE
                COURT OF COMMON PLEAS
                COUNTY OF WAYNE, OHIO
                CASE No.  08-1312-AND

DECISION AND JOURNAL ENTRY

Dated: October 11, 2011

   DICKINSON, Judge.

INTRODUCTION

**{¶1}** Two-year-old A.T. has been in foster care for most of his life. Neither of his parents is willing or able to provide a permanent home for him. His paternal grandparents, with the support of the children services agency, sought legal custody. The child's guardian ad litem, however, moved for permanent custody for the purpose of making A.T. available for adoption by his foster parents. The trial court granted legal custody to the grandparents. The guardian ad litem has appealed and has assigned five errors for review.

**{¶2}** The guardian ad litem has argued that the trial court imposed an erroneous burden of proof on her and that the award of legal custody to the grandparents is contrary to law, not in the best interest of the child, an abuse of discretion, and against the manifest weight of the evidence. This Court affirms because we conclude that the guardian ad litem has not clearly and

convincingly established that permanent custody is in the best interest of the child or that the judgment is otherwise erroneous.

## BACKGROUND

{¶3} A.T. was born on September 1, 2008. He and his teen-aged mother lived in Georgia with A.T.'s maternal grandfather until December 2008, when A.T., his mother, and her then boyfriend moved to Ohio. A referral soon brought the family to the attention of the Wayne County Children Services Board.

{¶4} The agency investigated and filed a dependency complaint on December 16, 2008. The agency alleged that the mother was staying in a friend's trailer, lacked adequate food and supplies for the baby, and was not providing him with proper medical care. The mother was allegedly inappropriately feeding solid food to the infant.

{¶5} The trial court issued a finding of dependency on February 2, 2009, and granted temporary custody to the agency shortly thereafter. The agency placed A.T. with a foster-to-adopt couple. A.T.'s father was unknown at the time. The mother last contacted the child in September 2009. The agency moved for permanent custody in November 2009. Paternity was established shortly thereafter, however, and the agency withdrew its motion so that it could pursue custody with the father.

{¶6} After paternity was established, the paternal grandparents became involved in the proceedings and started visiting A.T. from their home in southern Georgia. The father visited along with his parents and supported the efforts of his parents to obtain legal custody of A.T. A home study for the grandparents was approved, and a bonding assessment recommended that the child be placed with them.

{¶7}   On October 25, 2010, the agency moved for legal custody to the grandparents. The grandparents subsequently filed their own motion for legal custody.  On November 2, 2010, the guardian ad litem moved for permanent custody, with the goal of making A.T. available for adoption by the foster parents.  Following a hearing, the trial court denied the guardian ad litem's motion for permanent custody and granted legal custody to the paternal grandparents.  The guardian ad litem has appealed and has assigned five errors.

BURDEN OF PROOF

{¶8}   The guardian ad litem's first assignment of error is that the trial court erroneously applied a higher standard of proof than it should have.  Specifically, she has asserted that "the trial court erred as a matter of law by improperly assigning a higher standard of proof for the guardian ad litem to meet since the pending motion for permanent custody was filed on behalf of the child by the guardian ad litem."  The guardian ad litem's supporting argument, however, has not addressed or challenged the level of proof actually utilized by the trial court, but has instead addressed the arguments made by the opposing lawyers before the trial court.  She has complained that the opposing lawyers asserted the guardian ad litem should have "a higher standard of proof" because the motion for permanent custody was filed by the guardian ad litem and not by the agency.  The guardian ad litem has not stated what she believes the proper burden of proof should be, nor has she stated exactly what burden of proof was urged by the opposing lawyers.

{¶9}   Arguments by opposing lawyers are not the proper subject of an assignment of error and are only potentially relevant to an appeal if those arguments have impacted some aspect of the trial court judgment.  "The sole purpose of an appeal is to provide the appellant an opportunity to seek relief in the form of a correction of errors of the lower court that injuriously

affected him." *BFG Fed. Credit Union v. CU Lease Inc.*, 9th Dist. No. 22590, 2006-Ohio-1034, at ¶36 (citing *Petitioners v. Bd. of Twp. Trs.*, 4 Ohio App. 2d 171, 176 (1965)).

{¶10} We construe the guardian ad litem's argument as a challenge to the burden of proof applied by the trial court. From the judgment entry, it appears that the court utilized the clear and convincing burden of proof in ruling on the guardian ad litem's motion for permanent custody. The Ohio Supreme Court has held that "[a] court must conclude by clear and convincing evidence that an assignment of permanent custody is in the best interest of the child." *In re Schaefer*, 111 Ohio St. 3d 498, 2006-Ohio-5513, at ¶56. This standard has been determined to be consistent with the due process requirements applicable to permanent custody cases as announced by the United States Supreme Court. See *Santosky v. Kramer*, 455 U.S. 745, 748, (1982) (holding that the "clear and convincing evidence" standard satisfied the due process requirements of the United States Constitution in permanent custody cases). The guardian ad litem has failed to either assert or demonstrate any error by the trial court in applying the clear and convincing standard of proof. Accordingly, the guardian ad litem's first assignment of error is overruled.

{¶11} By her third and fourth assignments of error, the guardian ad litem has argued that the trial court's decision granting legal custody to the grandparents is not in A.T.'s best interest, constitutes an abuse of discretion, and is against the manifest weight of the evidence. Before a juvenile court may terminate parental rights, it must find clear and convincing evidence on both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Section 2151.41.4(E) of the Ohio Revised Code; and (2) that a

grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.41.4(D) of the Ohio Revised Code. See R.C. 2151.41.4(B)(1) and (2); see also *In re William S.*, 75 Ohio St. 3d 95, 99 (1996).

{¶12} When evaluating whether a judgment is against the manifest weight of the evidence in a permanent custody case, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986). The trial court found that the first prong was satisfied because the child had been in the temporary custody of the agency for at least 12 of 22 consecutive months. See R.C. 2151.41.4(B)(1)(d). In addition, the trial court found that the mother had abandoned her child. See R.C. 2151.41.4(B)(1)(b). The father has taken the position that he is unable to provide for A.T. on his own and has supported the grandparents' motion for legal custody. The parties do not dispute satisfaction of the first prong of the permanent custody test. Thus, the only question is the finding regarding A.T.'s best interest.

{¶13} When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in Section 2151.41.4(D)(1): the interaction and interrelationships of the child, the wishes of the child, the child's custodial history, and the child's need for permanence in his life. See *In re S.N.*, 9th Dist. No. 23571, 2007-Ohio-2196, at ¶27.

## Relationships of the Child

{¶14} A.T.'s mother has not had any contact with him since September 2009. The father was not aware of the existence of A.T. until these proceedings began. After paternity was established, he attended visits along with his own parents and his brother. The father testified, however, that he did not believe he would be able to care for the child himself, and instead supported his parents' efforts to obtain legal custody. He hoped to continue a relationship with A.T. through their legal custody of him.

{¶15} The paternal relatives live in southern Georgia. They traveled 13 hours each way by car to attend five or six visits with A.T. The visits went well, quickly became unsupervised, and included a few Friday to Sunday visits. The paternal grandfather testified that they would have liked to have come more often, but were not financially able to do so. He testified that he and his wife had discussed how to help make A.T. comfortable in their home and plans for his education. He also said that they love him. The paternal grandmother testified that she knows there will be problems in a transition, but is very excited about the possibility of A.T. coming to their home. She arranged to take two weeks off work if legal custody is granted to them, and she also arranged to change her shift at work in order to better accommodate him. She promised to give him all the love and care he needs.

{¶16} A.T. had resided with his foster parents for approximately two years at the time of the hearing. By all accounts, they provided very good care to him. A.T. was reported to have developed into a normal, healthy two-year-old. The director of his day-care, the teacher of his day-care class, and the Help Me Grow provider all testified that the foster parents had a good relationship with A.T. The foster father was said to be the main caregiver. The foster parents would like to adopt A.T. if permanent custody is granted to the agency. The foster father

testified that he would agree to allow the biological relatives to have a continuing relationship with A.T.

{¶17} The guardian ad litem requested that a bonding assessment be done. Dr. Marianne Bowden, who conducted the assessment, explained that her referral was two-pronged: an evaluation for the agency and a request from the guardian ad litem.

{¶18} Dr. Bowden acknowledged that the foster parents are the "psychological parent[s]" of A.T. and that she had no concerns about their parenting abilities. Additionally, Dr. Bowden testified that A.T.'s interaction with the grandparents is very positive. She noted that she had observed A.T. go to the grandmother for comfort and that she was able to comfort him. She also testified that A.T.'s father is low-functioning intellectually, but that his interaction with A.T. is improving and that she has observed positive interaction between them.

{¶19} After conducting her investigation, Dr. Bowden concluded that, although there may be difficulties in the short term transition, A.T. would be better off in the long term if he were placed with his biological grandparents. She testified that being with his biological family would have a positive effect on A.T. in the long term; while not being with his biological family could be very hard on him. In other words, the long term benefits of placing A.T. with his biological relatives outweigh the immediate difficulties that A.T. may experience in leaving his foster home. Accordingly, she recommended that A.T. be placed in the legal custody of the paternal grandparents. Dr. Bowden explained that a bonding assessment requires her to look at two sets of people, and that her assessment would not have been complete without making a custody recommendation.

{¶20} In discussing the impact on A.T. of being moved from his home of two years, Dr. Bowden emphasized that all the adults in A.T.'s life viewed him as functioning very well for a

child his age and because of that, his prognosis for adapting to his new surroundings is positive. While it would not be unusual for A.T. to have some behavioral problems in the short term, according to Dr. Bowden, the problems will likely be of shorter duration because of A.T.'s coping skills. Dr. Bowden added that she believes the grandparents understand that there will be adjustment problems and that they will be able to deal with them.

{¶21} Dr. Bowden further explained that, even though the paternal grandparents had not been able to spend a great deal of time with A.T., they had made a very strong effort to work with the system to be a part of A.T.'s life. She stated that their visits were regular enough that if A.T. were placed with the grandparents, he would do well with them in the long run. Accordingly, Dr. Bowden recommended that A.T. should be placed with the paternal grandparents.

### Wishes of the Child

{¶22} The wishes of a child as young as A.T. may generally be expressed by the child's guardian ad litem. See R.C. 2151.41.4(D)(1)(b). A.T.'s guardian ad litem testified that she believes permanent custody is in the best interest of A.T. so that he might be adopted by his current foster parents. She stated that the foster parents have provided a loving and stable environment. She admits that A.T. also responds well to the paternal grandmother, but believes it would be traumatic for him to be separated from his foster parents of more than two years. In large part, she rests her opinion on the belief that his foster parents are "the only people that he's known as his parents."

{¶23} The guardian ad litem has emphasized the fact that A.T. has been in the care of the foster parents for two years. The grandparents and agency have countered by pointing to the fact that the guardian ad litem's legal position is partially responsible for the length of that

placement, having resulted from various motions and her opposition to the agency's request for placement with the paternal grandparents earlier.

{¶24} The guardian ad litem has also suggested that the child exhibited stress indicators after visits by his relatives. There was evidence before the trial court, however, that the child's sometimes difficult behavior after visits may have merely been the result of fatigue and the alterations in his schedule. Further, Dr. Bowden stated that it would be normal for the child to exhibit behavioral problems in the short term and they would be overcome by the long term benefits of a transition to the custody of his grandparents.

Custodial history

{¶25} A.T. lived with his mother for the first three months of his life and was then placed in the custody of the agency. The agency placed him with the foster-to-adopt couple, where he has remained for approximately two years. His mother has not had any contact with him since February 2009. After paternity was established, A.T. has had periodic visits from the father's family.

Whether a legally secure permanent placement can be achieved
without a grant of permanent custody

{¶26} There is no dispute that A.T., like most children, needs a legally secure permanent placement. The only significant question was whether such a placement could be achieved without a grant of permanent custody.

{¶27} The posture of this case is such that the guardian ad litem filed a motion for permanent custody, with the hope of eventual adoption of A.T. by his foster parents. Meanwhile, the agency, through the testimony of both the caseworker and the executive director, expressed the belief that it would be best for the child to permanently reside with his paternal grandparents. The agency and the paternal grandparents, therefore, each filed motions seeking legal custody to

the grandparents. As pointed out by the trial judge, the question of adoption was not before the trial court in this case. Even if permanent custody were granted, there is no guarantee that the foster parents would be permitted to adopt A.T. That question would be decided by a probate judge in a separate proceeding.

{¶28} The guardian ad litem has argued that legal custody does not give A.T. the permanency he needs because the status can be challenged by motion. The General Assembly has provided, however, that "an order . . . granting legal custody of a child to a person is intended to be permanent in nature." R.C. 2151.42(B). Although a court may subsequently modify or terminate an order granting legal custody, it may do so only if "it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child." *Id.*

{¶29} The guardian ad litem has also argued that illness and old age should be considerations when placing a child with an "older generational family member." While age might be a factor in some cases, it does not appear to be significant here. There is no evidence that either grandparent has any chronic health problems. In addition, at 46 and 43 years of age, the grandparents are not of such advanced ages that they would likely be unable to care for A.T. until adulthood.

{¶30} Finally, the guardian ad litem has argued that, in weighing the best interest factors, "[r]elatives enjoy no higher priority than anyone else does." But the question of whether relatives receive priority was not before the trial court. The question before the trial court was a determination of the best interest of the child, and that determination includes consideration of whether a legally secure permanent placement for A.T. could be achieved without a grant of

permanent custody to the agency. This factor is grounded on the long-standing premise that permanent custody should be granted only as a "last resort[.]" *In re Cunningham*, 59 Ohio St. 2d 100, 105 (1979). To be clear, the primary question before the trial court was not whether to award custody to either the foster parents or the grandparents, but rather whether the evidence clearly and convincingly supported an award of permanent custody. One part of that statutory test is whether a legally secure permanent placement for A.T. could be achieved without a grant of permanent custody to the agency. The evidence before the trial court amply supports the conclusion that a legally secure permanent placement can be achieved through an award of legal custody to the grandparents.

{¶31} The guardian ad litem failed to present clear and convincing evidence that permanent custody was in the best interest of the child. Furthermore, the record does not demonstrate that the trial court clearly lost its way and created a manifest miscarriage of justice in finding that permanent custody is not in the best interest of the child. Having concluded that permanent custody was not in the best interest of the child, the trial court granted legal custody to the paternal grandparents. The foster parents did not move for legal custody of A.T. The decision granting legal custody to the grandparents was subject to the sound discretion of the trial court, and the guardian ad litem has not demonstrated that the trial court exercised improper discretion in so ruling. The guardian ad litem's third and fourth assignments of error are overruled.

{¶32} By her second and fifth assignments of error, the guardian ad litem has asserted that the trial court erred as a matter of law in granting legal custody to the paternal grandparents, and, concurrently, in not awarding permanent custody to the agency. Because the guardian ad

litem has not separately argued these assignments of error beyond what has already been discussed, they are overruled.

CONCLUSION

{¶33} The guardian ad litem's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
CONCURS

CARR, J.
CONCURS, SAYING:

{¶34} Although I concur with the majority in affirming the trial court's order, I write separately to express my concerns as to whether a guardian ad litem has standing to file a motion for permanent custody in a situation where the child protective agency opposes such a disposition.

{¶35} I recognize the Ohio Supreme Court's holding in *In re C.T.*, 119 Ohio St.3d 494, 2008-Ohio-4570, at syllabus, that "[a] guardian ad litem has authority under R.C. 2151.281(I) and 2151.415(F) to file and prosecute a motion to terminate parental rights and award permanent custody in a child welfare case." I believe that *C.T.* may be distinguishable though and should be limited in application due to the alignment of interests present in that case, since the county children services agency did not oppose the guardian ad litem's motion for permanent custody. Here, however, CSB not only opposed the guardian's motion for permanent custody, but filed its own dispositional motion, specifically a motion for legal custody to relatives, which constituted a less restrictive custodial disposition.

{¶36} R.C. 2151.353(A) allows the trial court to make various dispositional orders, including an award of permanent custody to a public children services agency or private child placing agency, with respect to a child adjudicated an abused, neglected, or dependent child. R.C. 2151.353(B), however, places restrictions on the court's authority to order permanent custody. Specifically: "No order for permanent custody *** shall be made pursuant to this section unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting permanent custody, *** the summons served on the parents of the child contains as is appropriate a full explanation that the granting of an order for permanent custody permanently divests them of their parental rights, a full explanation that an adjudication that the child is an

abused, neglected, or dependent child may result in an order of temporary custody that will cause the removal of the child from their legal custody until the court terminates the order of temporary custody or permanently divests the parents of their parental rights ***.  If after making disposition as authorized by division (A)(2) [i.e., committing the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court], a motion is filed that requests permanent custody of the child, the court may grant permanent custody of the child *to the movant* in accordance with section 2151.414 of the Revised Code."  (Emphasis added.)  R.C. 2151.353(B).

{¶37}  In *C.T.*, the public children services agency, by failing to oppose the motion for permanent custody, effectively acquiesced in the motion.  In the instant case, however, CSB opposed the motion and, in fact, prosecuted its own motion for legal custody to the grandparents.  The juvenile court could not have awarded permanent custody of the child to the guardian ad litem, the sole "movant" in this case.  Instead, had it found permanent custody to be in the child's best interest, its award of permanent custody would have forced custody on a party who did not want it, perhaps under circumstances where the parents had not been fully apprised of the ramifications of the initial adjudication.  Because no party or third party could be compelled to accept an award of legal custody if that person does not personally request it, I am troubled by a procedure that allows a party to attempt to compel CSB to assume permanent custody of a child.

{¶38} I recognize that no party has properly raised this issue for this Court's consideration.  I mention it solely in the hope that the legislature will revisit the statutory scheme and clarify who has the authority under circumstances such as this to file and prosecute a motion for permanent custody.

APPEARANCES:

RENEE J. JACKWOOD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA WILES, Assistant Prosecuting Attorney, for Appellee.

CLARKE W. OWENS, Attorney at Law, for Appellee.

LARRY D. SHENISE, Attorney at Law, for Appellee.

KARIN C. WIEST, Guardian ad Litem.