DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Sonya G., appeals from the decision of the Summit County Court of Appeals, Juvenile Division, that terminated her parental rights to her minor child, P.B., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Appellant is the mother of P.B., born November 11, 2002. The child's father did not participate in the proceedings below and is not a party to this appeal.
 {¶ 3} The present matter began in March 2005 when appellant was arrested for selling illicit drugs to an undercover police officer in the presence of her child. The child was removed from her custody pursuant to Juv.R. 6. CSB then filed a complaint, alleging that P.B. was abused, neglected, dependent, and endangered, and seeking temporary custody. CSB further alleged that the agency had been involved with the family on two previous occasions: first, when appellant's parental rights to a sibling of P.B. were involuntarily terminated in 2001, and second, when the agency had custody of P.B. for two months after her birth in 2002.
 {¶ 4} The trial court granted an order of emergency temporary custody of P.B., and the case proceeded to adjudication and disposition. The trial court found the child to be dependent, neglected, and abused, and placed her in the temporary custody of CSB.
 {¶ 5} The trial court adopted a case plan which required appellant to: (1) attend parenting classes, develop a safe childcare plan, and not place the child at risk by exposing her to dangerous situations; (2) complete a drug and alcohol assessment and comply with all recommendations, including random drug screens; (3) complete a mental health assessment, learn how her mental health impacts her child, and comply with all recommendations; and (4) provide for her child's basic needs. Visitation was scheduled for one hour weekly. In June 2005, visitation was increased to twice weekly.
 {¶ 6} On August 10, 2005, CSB moved, pursuant to R.C.2151.419, that it not be required to make reasonable efforts to eliminate the continued removal of the child from the home based on the fact that the biological father had abandoned P.B. and appellant had her parental rights involuntarily terminated with respect to a sibling of the child. See R.C. 2151.419(A)(2)(d) and (e). Appellant opposed the motion on the ground that the frequency of visits had increased, there was good interaction during visits, and appellant had made substantial progress on her case plan. Following hearing, the trial court granted CSB's motion.
 {¶ 7} On November 23, 2005, CSB moved for permanent custody of the children. For her part, appellant moved for legal custody, or, in the alternative, for a six-month extension of temporary custody. Following a hearing, the trial court found that P.B. could not be placed with either of her parents within a reasonable time or should not be placed with her parents, and that permanent custody was in the best interest of the child. The trial court specifically found that the father had abandoned the child and that appellant had her parental rights involuntarily terminated as to a sibling of P.B. The trial court, therefore, terminated the parental rights of appellant and placed P.B. in the permanent custody of CSB. The trial court denied all other dispositive motions.
 {¶ 8} Appellant timely appeals and assigns one error for review.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING PERMANENT CUSTODY WHERE THE BEST INTERESTS OF THE CHILD INDICATED THAT A FIRST SIX-MONTHS EXTENSION SHOULD HAVE BEEN GRANTED."
 {¶ 9} Appellant asserts that the trial court erred in terminating her parental rights to P.B. and placing the child in the permanent custody of CSB. Appellant claims that the trial court should have granted her a six-month extension of temporary custody instead.
 {¶ 10} Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996),75 Ohio St.3d 95, 97-99.
 {¶ 11} In satisfaction of the first prong of the permanent custody test, the trial court found that the child could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(B)(1)(a). Regarding the second prong, the trial court found that the best interest of the child was to be placed in the permanent custody of CSB. See R.C. 2151.414(D). Appellant challenges the findings of the trial court on both prongs of the permanent custody test.
 {¶ 12} Concerning the first prong, when the trial court determines, by clear and convincing evidence, that one of the factors in R.C. 2151.414(E) exists as to each of the child's parents, it must enter a finding that the child could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(E). See, also,In re William S., supra. In the present case, the trial court specifically found that appellant failed to remedy the conditions that brought P.B. into care, pursuant to R.C. 2151.414(E)(1), and also that she had her parental rights involuntarily terminated as to a sibling of P.B., pursuant to R.C. 2151.414(E)(11). In regard to P.B.'s father, the trial court found that he had demonstrated a lack of commitment to the child in that he failed to regularly support, visit or communicate with her, pursuant to R.C.2151.414(E)(14) and had also abandoned P.B., pursuant to R.C.2151.414(E)(10).
 {¶ 13} Appellant challenges the finding regarding her alleged failure to remedy conditions that brought P.B. into care, by asserting that she made satisfactory efforts to remedy the circumstances that led to the child's removal. It is not necessary to address this assertion at this point, however, because appellant does not challenge the additional "E factor" finding that appellant had her parental rights involuntarily terminated as to a sibling of P.B. Furthermore, appellant does not challenge the statutorily compelled conclusion that the child cannot, therefore, be placed with either of her parents within a reasonable time or should not be placed with her parents. See R.C. 2151.414(E); R.C. 2151.414(E)(11); and In re William S., supra. In addition, there is no challenge to the "E factor" findings regarding P.B.'s father. See R.C. 2151.414(E)(14) and R.C. 2151.414(E)(10). Consequently, the trial court's finding that P.B. could not be placed with either parent within a reasonable time or should not be placed with either parent is compelled by unchallenged findings pursuant to R.C. 2151.414(E). The first prong of the permanent custody test is therefore satisfied.
 {¶ 14} As to the trial court's finding on the second prong of the permanent custody test, appellant contends that the trial court erred in concluding that permanent custody was in the best interest of the child. This Court reviews a trial court's factual findings as to the best interest of the child to determine whether they were against the manifest weight of the evidence. See In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983.
 {¶ 15} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations sic). Id., citing Thompkins,78 Ohio St. 3d at 387, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175.
 {¶ 16} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5)
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith
(Jan. 2, 2002), 9th Dist. No. 20711; see, also, In rePalladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 17} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 18} The first best interest factor requires the court to consider the child's interactions and interrelationships with others. Appellant contends that both CSB and the trial court ignored this factor. Our review of the record indicates that neither CSB nor the trial court ignored this factor, but rather that CSB presented a significant amount of evidence relevant to this factor and the trial court made specific findings concerning it.
 {¶ 19} On this point, CSB presented testimony from David Brown, appellant's counselor at Portage Path; Alan Futo, a social service aide at CSB; and Dana Klapper, the CSB protective service worker assigned to this case. The child's attorney/guardian ad litem also testified. In addition, CSB introduced documentary evidence of appellant's involvement with the Community Health Center and Portage Path.
 {¶ 20} In its decision, the trial court found that P.B.'s father does not have any current relationship with the child. As to appellant, the trial court found that P.B. shares a bond with appellant, but that their relationship varies with each visit. The court found that some visits went well, while others did not. Appellant's behavior was often erratic. The court also found that that P.B. separates from appellant easily at most visits. P.B. was found to be very well-bonded to her foster family, who wish to adopt her should permanent custody be granted. The trial court expressed its greatest concern with appellant's lack of judgment and her inability to protect P.B. from potential harm. In this context, the trial court noted that P.B. came into care due to her presence at a drug deal by appellant.
 {¶ 21} Additionally, the trial court found that appellant had demonstrated a lack of compliance with each of her case plan objectives, and that the present case plan objectives "mirror those of the prior case."[1] Specifically, the trial court found that appellant had failed to engage in counseling, and, in fact, had failed to even recognize her need for counseling. The trial court indicated its concern regarding episodes where appellant reported persons being present when no one was there[2] and other examples of disorganized thinking. In this context, the trial court took care to describe appellant's demeanor in court as being "angry and short which also calls into question her ability to calmly deal with the issues that present themselves as a part of normal child rearing." Second, the court noted appellant's failure to complete substance abuse treatment or to provide requested drug screens. Third, the court expressed concern with appellant's reported behavior during visits with her child: often being short with P.B. and expressing frustration with her for demonstrating age-appropriate behavior. Finally, the court noted appellant's inability to meet her own financial needs or to provide for the child's basic needs.
 {¶ 22} The evidence presented at the permanent custody hearing fully supports these findings by the trial court. Dana Klapper, the CSB caseworker, testified that her greatest concerns were appellant's mental health and general lack of follow-through. Klapper testified that appellant's mood and behavior were inconsistent, and led to a concern with appellant's ability to relate to her child. The caseworker also testified about appellant's failure to acknowledge the potential danger to her child created by her drug trafficking offense. In general, she believed appellant had not demonstrated any insight into the reasons why this case was initiated.
 {¶ 23} David Brown, appellant's counselor at Portage Path Behavioral Health, testified that he treated appellant for a mood disorder, not otherwise specified, and an undetermined personality disorder. He scheduled appellant's sessions on a walk-in basis, due to appellant's history of unreliability and in an effort to make attendance easier for her. Initially, he made clear his desire that appellant come in on a weekly or bi-weekly basis. While appellant made some progress, the counselor believed she was hindered by a lack of regular attendance. Indeed, by her last session, appellant still had difficulty identifying the reasons for the creation of the case, and she demonstrated very little insight and accepted little personal responsibility for the removal of her child. Brown stated that appellant continues to get easily frustrated and to have unrealistic expectations about her case.
 {¶ 24} For her part, appellant maintains that Brown later requested that she attend sessions only on a monthly basis. Even so, the record reveals that from the time of appellant's August 2005 assessment until the May 2006 permanent custody hearing, appellant attended only six counseling sessions and attended no such sessions in five of the eight months during which she was under Brown's care.[3]
 {¶ 25} As to appellant's need to address her parenting skills, caseworker Klapper acknowledged that appellant had attended parenting classes, but nevertheless had failed to demonstrate what she had learned or that she knows how to parent P.B. Also significant is the fact that appellant missed nearly a quarter of her scheduled visits with her child. Alan Futo, the CSB aide who monitored many of appellant's visits with P.B., testified that appellant's behavior during visits was erratic. He stated that her demeanor might range from pleasant and sociable to angry and emotional within a single visit. Futo believed that appellant had difficulty recognizing and adapting to P.B.'s desires and interests. He testified that appellant might become angry with P.B. when she was merely behaving in an age-appropriate manner. Appellant's behavior often resulted in the child removing herself from appellant and choosing to interact with someone else instead. This visitation monitor therefore questioned the strength of the bond between appellant and P.B. Futo testified that he had not observed any notable improvement in appellant's stability over the course of these proceedings.
 {¶ 26} For her part, appellant attempts to explain her lack of compliance with case plan requirements by claiming that she was not given enough bus passes from CSB to cover transportation for all of her required appointments. She complained that she could not afford both her prescription co-pays and the extra bus tickets that she needed. Given the surrounding facts in this matter, we cannot accept appellant's reasoning.
 {¶ 27} Initially, we note, with concern, that this case began with appellant's arrest and subsequent conviction for five counts of drug trafficking — all occurring on separate dates — and one count of child endangering. Appellant testified that she had sold marijuana and pain medication "to get extra money for * * * me and my daughter." Significantly, the events which formed the basis for these arrests took place before appellant had any need to purchase bus tickets for appointments with case plan service providers, and also apparently during the time when she was receiving additional funds to provide for her daughter. Notwithstanding her alleged financial problems, it appears that appellant still managed to have sufficient money to purchase marijuana. Then, on August 25, 2005, while appellant was on probation for the previous offenses and was also under scrutiny in the present custody matter, appellant was arrested for a theft offense. Following a plea of no contest, she was ordered to pay a fine and make restitution. She still owes $188 for that transgression.
 {¶ 28} At a minimum, the August 2005 conviction demonstrates extremely poor judgment on the part of appellant in appreciating the seriousness of her situation and the ramifications of her own behavior upon her child. We are compelled to recognize that where this appellant has found it necessary to sell drugs and to steal in order to support herself and her child, she has not demonstrated the ability to provide a proper environment for her child or to provide for the basic needs of her child in an appropriate manner.
 {¶ 29} In sum, the evidence presented at the permanent custody hearing regarding P.B.'s relationship with appellant revealed that appellant's erratic behavior negatively affected her ability to interact with her child, and that appellant demonstrated very poor judgment in matters that have a direct bearing on her ability to provide for the safety and well-being of her child.
 {¶ 30} As to the second best interest factor, P.B. was too young to express her wishes directly to the court, but the guardian ad litem stated her belief that permanent custody was in the best interests of P.B.
 {¶ 31} Third, the custodial history of the child reflects that she was removed from appellant's care shortly after her birth and remained in the custody of CSB for two months. P.B. then resided with appellant for two years until March 11, 2005 when she was removed from the home following appellant's arrest. The child has resided in two foster homes while in temporary custody. She was removed from the first foster home because P.B. and a little boy in the home were aggressive with each other. P.B. has been in her present foster home since December 2005, and those foster parents are interested in adopting her if permanent custody is granted.
 {¶ 32} Fourth, there was evidence before the trial court that supported its conclusion that the child's need for a secure permanent placement could only be met by a grant of permanent custody to the agency. Caseworker Klapper testified that P.B. deserved a permanent placement and that it was in her best interest to be placed in the permanent custody of CSB. Klapper stated further that appellant had not made sufficient progress to demonstrate an ability to care for the child and provide the stability and security of a safe environment. She explained that no suitable relatives were willing to assume legal custody, and, as stated above, the current foster parents are interested in adopting P.B. if permanent custody is awarded.
 {¶ 33} Janet Stich, the attorney/guardian ad litem, also reported that she believed permanent custody was in the best interest of the child. She based her conclusion on appellant's limited compliance with the case plan, her failure to satisfactorily address mental health and substance abuse issues, and her relationship with her child. While this guardian ad litem observed a bond between appellant and P.B., Stich was particularly concerned with appellant's failure to acknowledge that she endangered the safety of her child by selling drugs and by appellant's repeated demonstrations of poor judgment. She believes legal custody is not warranted in this case because appellant has not gained insight into the mental health issues that initially placed P.B. at risk.
 {¶ 34} The guardian ad litem and visitation monitor both testified that P.B. was doing very well in foster care and was very bonded to her foster parents. P.B. appeared to be comfortable and affectionate with the foster parents. The child was always happy to see them at the conclusion of a visit.
 {¶ 35} Appellant contends that the trial court failed to give due weight to the evidence supporting a six-month extension. In defense of her argument, she first asserts that she substantially complied with her case plan objectives and made satisfactory efforts to remedy the circumstances that led to the child's removal. Appellant also contends that the trial court erred in concluding that permanent custody was the only means of providing P.B. with a stable, suitable, and loving home, when the foster parents were willing to continue providing for her care.
 {¶ 36} This Court notes, first, that a trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). R.C.2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension.
 {¶ 37} In addition to the evidence already cited, caseworker Klapper specifically testified that she did not believe a six-month extension of temporary custody would be wise in this case. She explained that P.B. was becoming confused and apprehensive when she saw appellant and her foster mother together at visitations. To extend temporary custody would not promote the stability of the child or fulfill the child's need for a permanent placement.
 {¶ 38} Upon consideration, this Court finds that appellant has failed to demonstrate an abuse of discretion by the trial court in denying the motion for a six-month extension. The evidence before the trial court fully supports its conclusion that an extension of temporary custody was not in the child's best interest, that appellant made only minimal progress on her case plan, and that there was no reason to believe that reunification would occur within six months.
 {¶ 39} Second, pursuant to R.C. 2151.414(D)(4), the trial court was not simply charged with finding a "stable, suitable, and loving" placement, but rather was obligated to consider the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." (Emphasis added.) R.C.2151.414(D)(4). An extension of temporary custody and maintaining a child in foster care is not a step towards a legally secure permanent placement where the court otherwise finds such a decision not to satisfy the requirements of R.C. 2151.415(D)(1), as set forth above.
 {¶ 40} The trial court concluded that neither parent was capable of parenting P.B. and that no relatives had come forward to develop a relationship with the child or request consideration for custody. Therefore, the trial court concluded that permanent custody with a goal of adoption was the only means to secure a legally secure permanent placement for P.B.
 {¶ 41} Finally, the trial court was entitled to consider that appellant had her parental rights terminated as to an older half-sibling of P.B. in 2001. See R.C. 2151.414(D)(5) and R.C.2151.414(E)(11).
 {¶ 42} Based upon a thorough review of the evidence before the trial court, this Court cannot say that the trial court lost its way in concluding that permanent custody to CSB was in the best interest of P.B. Furthermore, the trial court did not err in concluding that P.B. could not be placed with either parent within a reasonable time or should not be placed with either parent. Having found no error by the trial court when it terminated appellant's parental rights to P.B. and placed the child in the permanent custody of CSB, appellant's sole assignment of error is overruled.
 III. {¶ 43} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Slaby, P.J., Moore, J., concur.
[1] Appellant complains that the trial court relied on hearsay when it suggested that appellant's case plan objectives were similar to those in the prior case. Appellant's objection appears to be based on the fact that the prior case plan was not admitted into evidence in the present case. Sufficient evidence of the prior case plan was properly before the trial court, however, because a certified copy of the journal entry which granted permanent custody of appellant's older child to CSB was introduced into evidence in the present case. That document indicates that the prior case plan addressed parenting skills, substance abuse, and mental health — objectives which are virtually identical to appellant's case plan objectives in present case. Therefore, there is no error involving hearsay.
[2] Appellant's counsel suggests that these problems resulted from improperly adjusted medication.
[3] Appellant argued that she also saw Dr. Malkovitz, a psychiatrist, to obtain her medications and that those appointments should satisfy her counseling obligations. There is no evidence, however, that those medical appointments altered appellant's obligation to meet consistently with her counselor.