DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Brady Ledbetter ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Mother is the natural mother of O.T., born November 23, 1998, and S.T., born December 30, 2001. The father of the children voluntarily relinquished his parental rights and is not a party to this appeal.
 {¶ 3} On October 4, 2006, CSB filed complaints alleging that O.T. and S.T. were neglected and dependent children primarily because their parents had substance abuse problems and had demonstrated an inability to provide a stable home for the children. On November 21, *Page 2 
2006, the trial court adjudicated O.T. and ST. dependent children and later placed them in the temporary custody of CSB.
 {¶ 4} CSB eventually moved for permanent custody of both children. CSB alleged that permanent custody was in the best interest of O.T. and S.T. and that several grounds existed to satisfy the first prong of the permanent custody test, including that O.T. and S.T. had been in the temporary custody of CSB for more than 12 of the prior 22 months, that the parents had failed to remedy the conditions that caused the children to be placed outside the home, and that Mother had chronic substance abuse problems that prevented her from providing a suitable home for the children.
 {¶ 5} CSB presented evidence to support all of its allegations. By Mother's own admission, she had been abusing drugs for most of her life. Although she had been in and out of drug treatment programs, she had never been able to achieve sobriety for an extended period of time. At the time of the hearing, Mother indicated that she had been sober for three months and believed that she could maintain long-term sobriety. Her drug counselor testified, however, that she did not think Mother could abstain from drugs for an extended period of time.
 {¶ 6} The trial court ultimately found that both children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in their best interests. Mother appeals and raises four assignments of error.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF O.T. AND S.T. TO [CSB] WHEN [CSB] FAILED TO PROVIDE FINANCIAL ASSISTANCE TO MOTHER, BRANDY LEDBETTER, TO CONTINUE SUBSTANCE ABUSE TREATMENT AND URINE DRUG SCREENS AS MANDATED BY HER COURT ORDERED CASE PLAN, IN VIOLATION OF HER DUE PROCESS RIGHTS UNDER U.S.C.A. CONST. AMEND[.] 14[.]" *Page 3 
 {¶ 7} Mother's first assignment of error is that she was denied due process because CSB failed to provide her with financial assistance to continue her drug treatment. She essentially maintains that she failed to complete an outpatient drug treatment program due to her inability to pay for treatment. The record fails to support her argument and instead reveals that Mother was terminated from a treatment program due to her own actions and then Mother made no effort to follow through with a different treatment program.
 {¶ 8} Over the past several years, Mother was involved in several drug treatment programs at Community Health Center. During this case, she was terminated from an outpatient program prior to successful completion because she violated the center's policy by carrying a box cutter, which the center considered a weapon. Mother conceded that she was aware that she was violating the center's policy by carrying the box cutter. She further admitted that, although she never used the box cutter to harm or threaten anyone, she carried the box cutter to use as a weapon if she needed to protect herself.
 {¶ 9} According to the testimony of the caseworker, after Mother was terminated from the Community Health Center program, the caseworker searched for another program that would accept her. The caseworker referred Mother to a free treatment program in Canton, but Mother failed to follow through with that program. The caseworker further testified that, had Mother followed through with that program, CSB would have provided her with daily bus passes to make the trip to and from Canton.
 {¶ 10} Mother testified and admitted that she made no attempt to get any type of drug treatment after she was discharged from the Community Health Center Program. She explained that she did not pursue the treatment program proposed by her caseworker because it would have taken too long each day to make the trip back and forth to Canton. *Page 4 
 {¶ 11} There is nothing in the record to indicate that Mother's failure to complete drug treatment was due to a lack of assistance from CSB, financial or otherwise. Because Mother has failed to demonstrate any due process violation, her first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "[R.C.] 2151.414(B)(1)(D) IS UNCONSTITUTIONAL AS IT IMPOSED A STATUTORY PRESUMPTION OF PARENTAL UNFITNESS OF MOTHER, BRANDY LEDBETTER, WHEN THE TRIAL COURT GRANTED PERMANENT CUSTODY OF O.T. AND ST. TO [CSB] BASED ON THE FACT THAT THEY HAVE BEEN IN [THE TEMPORARY] CUSTODY OF [CSB] FOR MORE THAN TWELVE MONTHS OF A TWENTY-TWO MONTH PERIOD, IN VIOLATION OF THE SUBSTANTIVE AND DUE PROCESS RIGHTS OF BRANDY LEDBETTER AS GUARANTEED UNDER THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 12} Through her second assignment of error, Mother challenges the constitutionality of R.C. 2151.414(B)(1)(d), the so-called "12 of 22" basis for the first prong of the permanent custody test. Mother did not dispute the constitutionality of this provision in the trial court; instead, she raises this challenge for the first time on appeal. We need not reach constitutional challenges that were not timely raised before the trial court. See State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
 {¶ 13} Even if Mother had timely raised a constitutional challenge, the trial court could have supported its decision with an alternate finding under R.C. 2151.414(E) and avoided the constitutional challenge. It is fundamental that courts do not reach constitutional issues unless it is absolutely necessary that they do so. Smith v. Leis,106 Ohio St.3d 309, 2005-Ohio-5125, at ¶ 54.
 {¶ 14} The record reflects that, in addition to the "12 of 22" ground, CSB alleged other statutory grounds in its motion for permanent custody. The agency alleged that the children could not be placed with the parents within a reasonable time or should not be placed with them *Page 5 
due to several factors, including: their failure to remedy the conditions that caused the child to be placed outside the home, R.C. 2151.414(E)(1); and Mother's chronic substance abuse that prevented her from being able to provide a suitable home, R.C. 2151.414(E)(2).
 {¶ 15} CSB presented evidence at the hearing to support these alternate permanent custody grounds. Had Mother raised a timely challenge in the trial court, the trial court could have relied upon one of the alternate grounds, as there was substantial evidence concerning Mother's long-term, chronic substance abuse and her inability to provide a suitable home for her children because of it. She failed to challenge the propriety of the "12 of 22" ground for permanent custody, however, so the trial court had no reason to find an alternate basis for the first prong of the permanent custody test.
 {¶ 16} Because Mother did not preserve this issue for appellate review, this Court will not reach the merits of her challenge. Mother's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF O.T. AND ST. TO [CSB] AND DENYING A SECOND SIX-MONTH EXTENSION PURSUANT TO [R.C] 2151.415(D)(2), WHICH WAS NOT IN THE BEST INTEREST OF THE CHILDREN."
 {¶ 17} Mother's third assignment of error is that the trial court erred in failing to grant an extension of temporary custody for another six months. She does not dispute that the trial court's decision to grant or deny a request for an extension of temporary custody is determined, at least in part, based on whether such an extension would be in the best interest of the child. See, e.g., In re P.B., 9th Dist. No. 23276, 2006-Ohio-5419, at ¶ 36. Because this Court has determined that permanent custody to CSB was in the best interest of O.T. and S.T., it would be inconsistent that an extension of temporary custody would also be in their best interests. Mother's third assignment of error is overruled accordingly. *Page 6 
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF O.T. AND ST. TO [CSB] WHEN [CSB] FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} In her final assignment of error, Mother contends that the trial court's permanent custody decision was not supported by the evidence. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 19} The trial court found that the first prong of the permanent custody test was satisfied because both children had been in the temporary custody of CSB for more than twelve of the prior twenty-two months. Mother does not challenge that factual finding.[1] Instead, her evidentiary challenge focuses on the best interest prong of the permanent custody test.
 {¶ 20} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors: *Page 7 
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[2].
 {¶ 21} Mother's interaction with the children was limited to supervised visitation at the CSB visitation center. According to the caseworker, Mother's attendance at the visits was sporadic and she failed to attend any scheduled visits for more than a month prior to the hearing. Mother testified at the hearing, but she offered no explanation for her failure to attend the scheduled visits with her children on a regular basis.
 {¶ 22} The children, who were six and nine years old at the time of the hearing, had expressed a desire to return to live with their mother. The trial court found that, although the children were old enough to express their wishes, they were not sufficiently mature to understand their needs as well as the guardian ad litem. The guardian ad litem opined that permanent custody was in the children's best interests, emphasizing Mother's inability to maintain long-term sobriety or to secure stable housing.
 {¶ 23} O.T. and S.T. had been in CSB custody since October 2006, when they were removed from Mother's home. Prior to their removal from the home, they had lived with *Page 8 
Mother, who had been abusing drugs throughout that period. By Mother's own admission, she has had a life-long drug problem, having first experimented with drugs at the age of seven. She further conceded that her drug problem had a negative impact upon her children.
 {¶ 24} Mother also had a history of unsuccessful attempts to achieve long-term sobriety. She had participated in drug treatment programs at Community Health Center on and off for the past eight years. Despite completing numerous drug treatment programs over the years, Mother testified that she would briefly achieve some level of sobriety and later relapse. According to Mother, the longest period that she had ever remained sober was seven months during her pregnancy with O.T., more than nine years earlier. Her drug counselor was not aware of Mother ever remaining sober for more than three months at a time. The counselor expressed her opinion that Mother had an "inability to achieve long-term abstinence."
 {¶ 25} There was evidence that O.T. and S.T., who had lacked any stability for most of their lives, were in need of a legally secure permanent placement. O.T., in particular, had serious mental health and behavior problems and was in need of ongoing treatment with medication and counseling for the next several years. One of his counselors testified that it was extremely important to his treatment success that he live in a structured and stable environment.
 {¶ 26} There was substantial evidence that Mother was not able to provide a suitable home for her children at the time of the hearing or any time within the foreseeable future. CSB had attempted to locate relatives who could take legal custody of the children, but none of these relatives was able to take the children on a permanent basis. The parents did not provide CSB with any names of potential placements for the children. The trial court reasonably concluded that granting permanent custody to CSB was the only way to achieve a legally secure permanent placement for the children. *Page 9 
 {¶ 27} There was ample evidence before the trial court to support its conclusion that permanent custody was in the best interests of O.T. and ST. Mother's fourth assignment of error is overruled.
 III. {¶ 28} The assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
CARR, J. DICKINSON, J. CONCUR
[1] She does challenge the constitutionality of the "12 of 22" provision, but that argument was addressed under her second assignment of error.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case. *Page 1