**[Cite as *In re T.C.*, 2019-Ohio-3008.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| T.C. DEPENDENT CHILD | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | Case No. 19CA0004 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2017-0425

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      July 25, 2019

APPEARANCES:

For Plaintiff-Appellee:

ANREW ROWAN
Asst. Pros., Licking Co. DJFS
20 S. Second St., 4th Floor
Newark, OH 43055

For Defendant-Appellant:

JERMAINE COLQUITT
33 W. Main St. Ste. 109
Newark, OH 43055

GUARDIAN AD LITEM:
STEPHANIE TACKETT
36 North Second St.
P.O. Box 919
Newark, OH 43058-0919

*Delaney, J.*

{¶1} Defendant-appellant Sandra Clemings ["Mother"] appeals from the December 18, 2018 Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, granting permanent custody of T.C. to plaintiff-appellee Licking County Job and Family Services, Division of Children Services [the "Agency"].

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother and Father are the parents of T.C., age 4 at the time of the permanent custody hearing. T.C. has special needs including autism.

{¶3} In June 2017, Newark police found T.C. wandering outside, unsupervised. Father was found in the family residence under the influence and in possession of methamphetamine. Mother acknowledged methamphetamine use with Father, in the family residence, when the child was present.

{¶4} Father was arrested, convicted, and sentenced to a prison term of 3 years for drug possession. His release date is in 2020.

{¶5} An ex parte order of removal was granted on June 12, 2017. Shelter care and temporary orders were entered the next day. An uncontested adjudication was held on August 9, 2017 and T.C. was ordered into temporary custody of the Agency. A case plan was adopted at the hearing.

{¶6} The motion for permanent custody was filed on February 12, 2018. The matter proceeded to trial on June 1, 2018 and June 15, 2018. On December 18, 2018, the magistrate granted permanent custody to the Agency. The trial court overruled Mother's objections, approving and adopting the magistrate's decision.

{¶7}   Mother appeals from the decision of the trial court dated December 18, 2018, terminating her parental rights and granting permanent custody of T.C. to the Agency.

{¶8}   The following evidence is adduced from the record of the hearing before the magistrate on June 1 and 15, 2018.

{¶9}   The issues identified for Mother included substance abuse, mental health, domestic violence, economic instability, and parenting.  The record of the permanent-custody hearing indicates Mother was in crisis during the hearing; she admitted her substance abuse has escalated; she is depressed and can't get off the couch; and she is "overwhelmed with all this stupid stuff [she's] supposed to do."  T. 37-39.

{¶10} Mother admits using methamphetamine, and that her use is escalating because it is now intravenous.  She admitted she used several days prior to the hearing.  Mother denied using heroin regularly, but acknowledged a heroin overdose in February 2018 that resulted in hospitalization and required two administrations of Narcan.

{¶11} Allison Keeley is the ongoing case worker for this family and referred Mother for substance-abuse treatment.  Keeley documented a number of treatment facilities which she worked to get Mother into, with no success.  In the fall of 2017, Mother started at Behavioral Healthcare Partners, which addressed both mental health and substance abuse issues.  Mother made little progress and indicated she did not like the counseling there.

{¶12} Mother was recommended for inpatient treatment, and Keeley and Mother identified Sojourner Recovery in Hamilton, Ohio as a potential placement.  Keeley drove Mother to the assessment, and brought her home afterward.  Mother said she "never

heard anything" from Sojourner about entering the program, even though an opening had purportedly been reserved for her.

{¶13} In January 2018, Mother engaged in treatment at Shepherd Hill, but was removed from the program by February 2018.

{¶14} In March 2018, Mother initiated services at Stepping Stone in Portsmouth, Ohio. Keeley drove her to the facility but found Mother at home a week later.

{¶15} In April 2018, Mother and Keeley identified Stanton Villa as a treatment option, but Keeley was skeptical and expressed concern because she knew it was expensive and there were no funds available to help Mother pay for it. Mother went to Stanton Villa for an assessment but was rejected due to inability to pay. She was referred to the local LAPP program but did not follow through. Mother did seek help at Courage House, but they were unable to help her because she denied current abuse by a partner. At the hearing, Mother stated she was attempting to enroll at Amethyst.

{¶16} By the time of the hearing in June 2018, Mother had not completed any substance abuse treatment. Mother's mental health treatment was also minimal and she repeatedly expressed her disdain for mental-health counseling.

{¶17} At the initiation of case plan services, Mother told the Agency she receives SSI benefits and has no other source of income, but she has never provided proof of benefits. Mother lived in a condo owned by Father's parents, but this was problematic because an "eviction notice" had been posted (although no court action was apparently pending) and Mother was planning to go to Courage House to live. Keeley testified that while Mother was living in the condo, there were concerns about people Mother allowed to stay there.

{¶18} Mother's case plan did not include parenting classes because sobriety is required before she could enroll. Mother did not participate in parenting classes although they were recommended.

{¶19} Mother's interaction with T.C. at visitation was positive. She missed very few scheduled visitations, and witnesses testified her interaction with her child was warm, loving, and appropriate.

{¶20} T.C. is presently in foster care in a home providing for children with special needs. He is autistic and was largely nonverbal upon arrival, but has improved. He is enrolled in preschool and participates in speech and occupational therapy. He is bonded with his foster mother and with other children in the home. Foster Mother is interested in pursuing adoption and has adopted other special-needs children. She is open to allowing contact between T.C. and his parents.

{¶21} The Guardian Ad Litem testified that it is in T.C.'s best interests to be placed in permanent custody of the Agency.

{¶22} Mother raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH [MOTHER] WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶24} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF

PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶25} "III.  THE TRIAL COURT'S DECISION DENYING AN EXTENSION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## ANALYSIS

### I., II., III.

{¶26} We address all of Mother's assignments of error together; all three assert the decision of the trial court is against the manifest weight of the evidence and/or based upon insufficient evidence. Mother also argues the trial court erred in denying an extension of time in which to complete her case plan.  We disagree.

{¶27} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).  In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d

578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

{¶28} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens App. No. 04CA10, 2004-Ohio-3146; In re: C. W., 2nd Dist. Montgomery App. No. 20140, 2004-Ohio-2040.

{¶29} We set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.,* 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

{¶30} When deciding a motion for permanent custody, a trial court must follow the guidelines for are provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody

of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶31} Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶32} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶33} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial

court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶34} If the child is not abandoned or orphaned, as is the case here, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶35} Relevant here, R.C. 2151.414(E)(1) states:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶36} As to Mother's argument regarding the denial of a 6-month extension, the decision to grant or deny an extension of temporary custody lies in the discretion of the juvenile court. *In re P.B.*, 9th Dist. Summit No. 23276, 2006-Ohio-5419, ¶ 36, citing R.C. 2151.415(D)(1) and (2). The juvenile court is authorized to exercise its discretion to extend temporary custody only if it finds, by clear and convincing evidence: "'(1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension.'" *In re J.P.-M.*, 9th Dist. Summit Nos. 23694 and 23714, 2007-Ohio-5412, ¶ 12, quoting *In re P.B.* at ¶ 36. Before the juvenile court may grant either permanent custody or a six-month extension of temporary custody, it must conduct a best interest analysis. *In re S.D*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 30. Accordingly, "[i]f permanent custody was in the children's best interests, the alternative disposition of extending temporary custody was not." *Id.*, citing *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10.

{¶37} We find appellee presented sufficient competent, credible evidence to demonstrate that T.C. cannot or should not be placed with Mother, as notwithstanding reasonable efforts on behalf of the Agency, Mother failed to remedy the problems that initially caused the removal of T.C. from his home. Mother put minimal effort into her case plan. She failed to successfully complete any substance abuse treatment, continued to use methamphetamine and heroin, failed to obtain employment or independent safe, stable housing, failed to engage in mental health counseling, and failed to produce any evidence of economic stability. Mother has no identifiable source of income; despite her

claims to receive S.S.I., throughout the course of her involvement with the Agency, she never produced any evidence of benefits.

{¶38} Mother testified she loves T.C. and wants to care for him, but she has not established any ability to do so. She admitted she would be dependent upon Courage House for housing after the hearing, that the program there would take 4 to 6 months, and that she didn't know if or when she would be able to have T.C. with her during that time. T. 177-179. Despite Mother's positive visitations with T.C., there are too many other stressors Mother has failed to overcome.

{¶39} Meanwhile, T.C.'s significant medical, emotional, and developmental needs are being addressed by his foster family. His foster mother loves him and wishes to adopt him. There are no available kinship placements. T.C. deserves permanency and Mother is not presently in a position to provide for his needs.

{¶40} Based on the forgoing, the trial court's findings that parents failed to remedy the conditions that existed at the time of T.C.'s removal, that T.C. could not be placed with either parent in a reasonable amount of time, and should not be placed with either parent are not against the manifest weight of the evidence, and are supported by sufficient evidence. We further find the trial court's finding that T.C.'s best interests were served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by sufficient evidence. That being true, the trial court also did not abuse its discretion in denying an extension of temporary custody. We therefore overrule each of Mother's assignments of error.

## CONCLUSION

{¶41} Mother's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.