[Cite as *In re C.N.L.*, 2020-Ohio-3771.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | **:** | **O P I N I O N** |
| C.N.L., ABUSED/DEPENDENT CHILD | **:** | |
| | | **CASE NO. 2020-L-036** |
| | **:** | |

Civil Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2018 AB 00747.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel*, and *Philip C. King,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Appellee).

*Josephine L. Begin*, Manning & Clair, Attorneys at Law, 38040 Euclid Avenue, Willoughby, Ohio 44094 (For Appellant).

*Brett J. Plassard,* 1875 West Jackson Street, Painesville, Ohio 44077 (Guardian ad litem).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, Ohio 44123 (For C.N.L, minor child).



THOMAS R. WRIGHT, J.

{¶1} Appellant, Tonya Blare, appeals the February 20, 2020 decision terminating her parental rights and granting permanent custody of her son to appellee, the Lake County Department of Jobs and Family Services (the Agency). We affirm.

{¶2} Appellant's son, C.N.L., was born in October 2009. In December 2012, the family was in their home when a car driven by a drunk driver crashed through the house

causing the hot water tank to explode. C.N.L. and his father were pinned under the car. C.N.L. suffered a traumatic brain injury and spent five days in a coma. His parents were not married but lived together at the time. C.N.L.'s sister was not injured, and appellant's parental rights regarding her are not at issue here. C.N.L.'s father's parental rights were likewise terminated but are not at issue in this appeal.

{¶3} The Agency first became involved with the family in March 2016 and requested emergency temporary custody of both children in August 2016 when the family was living in a tent on the property where the accident occurred in unsanitary conditions.

{¶4} C.N.L.'s parents separated, and C.N.L. was reunified with his father, but the Agency again secured emergency temporary custody of C.N.L. in June 2018 after his father choked him, which resulted in C.N.L being found an abused child in August 2018.

{¶5} C.N.L. has since resided in a small group home for children, and he needs nearly constant supervision due to ongoing behavioral issues that likely stem from his brain injury. His parents visit him weekly.

{¶6} A distant relative has custody of C.N.L.'s sister. This relative was unable to care for C.N.L.'s needs in light of his extensive behavioral issues. Despite Agency efforts, no other family members were found that could care for him.

{¶7} The Agency moved for permanent custody of C.N.L. in November 2019, and the trial court terminated his parents' parental rights and granted permanent custody to the Agency after a hearing.

{¶8} Appellant raises two assigned errors, which we address collectively:

{¶9} "The trial court's finding that C.H.'s best interests would be served by granting the Lake County Department of Job and Family Services permanent custody of

2

him was against the manifest weight of the evidence as it improperly balanced the speculative opportunity for the Department to find C.H. permanent placement through the increased resources that come with a grant of permanent custody, with the other factors of R.C. 2151.414(D).

{¶10} "The trial court's finding that C.H.'s best interests would be served by granting the Lake County Department of Job and Family Services permanent custody of him was against the manifest weight of evidence as it failed to acknowledge Mother and Father's substantial case plan compliance and progress, which warranted additional time for reunification."

{¶11} Appellant makes several arguments regarding C.N.L's father's efforts and compliance with his case plan. Although his parental rights were terminated as well as appellant's, we do not address these arguments since he is not a party to the appeal. We likewise do not address appellant's arguments regarding the Agency's reunification efforts with C.N.L.'s father.

{¶12} We "will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re J.S.E.,* 11th Dist. Portage Nos.2009-P-0091, 2009-P-0094, 2010-Ohio-2412, ¶ 25; *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The clear and convincing evidence standard requires that the evidence "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. * * * Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. * * * The

3

determination of the [trial] court should not be overturned unless it is unsupported by clear and convincing evidence." *Id.*

{¶13} "Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *Matter of D.H.*, 11th Dist. Ashtabula No. 2017-A-0081, 2018-Ohio-630, ¶ 18, quoting *In re West,* 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶ 37.

{¶14} Before a juvenile court can terminate parental rights and award permanent custody to the requesting Agency, it must conduct a hearing and apply a two-pronged analysis. First, a court must find by clear and convincing evidence that one or more of the factors in R.C. 2151.414(B)(1)(a)-(e) applies. These factors include whether the child has been in the Agency's custody for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

{¶15} Second, upon finding one or more of these factors applies, the trial court then, after a hearing, shall determine whether granting custody of the child to the Agency is in the child's best interest pursuant to the analysis delineated in R.C. 2151.414(D).

{¶16} Here, the Agency moved for permanent custody under the 12 out of the 22-month prong in R.C. 2151.414(B)(1)(d). The trial court agreed and made findings in support. Appellant does not challenge this aspect of the trial court's decision and concedes that CNL was in the Agency's custody for 12 months of a consecutive 22-month period, and as such, the first prong is satisfied.

{¶17} As for the second prong, the court must find by clear and convincing evidence that granting permanent custody of the child to the agency is in the best interest of the child upon considering all relevant factors including those in R.C. 2151.414(D).

4

Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶18} As stated, appellant challenges the court's best interest conclusion as against the manifest weight of the evidence. First, she contends the court improperly weighed and relied on the speculation that the child's placement options will increase with a grant of permanent custody to the Agency against the other factors. Second, appellant claims the court failed to recognize her and C.N.L.'s father's substantial case plan compliance and that such progress warrants granting additional time for reunification. For the following reasons, we disagree with both.

{¶19} The best interest of the child is governed by R.C. 2151.414(D), which states:

{¶20} "(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

{¶21} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶22} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶23} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child

5

placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶24} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶25} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶26} The evidence at the hearing establishes the following.

{¶27} C.N.L. had frequent, violent tantrums, which likely resulted from his brain injury. The Agency moved for permanent custody of C.N.L. after handprints were visible on his neck, and it was later determined that C.N.L.'s father had choked him. His father was subsequently convicted of child endangering, which included a court order restricting father to supervised visitation. This order was still in effect at the time of the hearing.

{¶28} C.N.L.'s therapist of three years, Shelly Rozic, testified that he suffers from attention deficit disorder and oppositional defiance disorder and that he was often verbally aggressive and had meltdowns and outbursts. C.N.L. also suffers from disruptive mood dysregulation disorder. She recalls his parents struggling with him and that they were moving a lot, living in a hotel, and C.N.L. was missing a lot of school. C.N.L. needs above-average care. Rozic recalls his parents were too laid back, lacked consistency, and that

6

his punishments were not age appropriate. Rozic believes that C.N.L.'s placement in the temporary children's home, Caley Home, provided him a much-needed stable environment that resulted in improved behavior and fewer meltdowns.

{¶29} The assistant program administrator at Caley Home, David Tressler, testified that C.N.L. needs one-to-one care. C.N.L. has daily angry outbursts and can become physical. A few attempts to place C.N.L. in foster homes did not go well and the families were unable to care for C.N.L.'s needs.

{¶30} The guardian ad litem concludes in his report that it is in C.N.L.'s best interest to grant custody to the Agency. The guardian finds that appellant has no income, lacks stable housing, and is not in a position to care for him.

{¶31} The Agency's social worker, Amanda Laidman, testified about her history with the family and C.N.L. During one attempted foster family visit, C.N.L. tried to attack the parents, kids, and their dog. Laidman said C.N.L.'s behavioral issues are very significant, and it has been very challenging to find foster care for him due to his brain injury. She said he needs a stable home, consistency, and 24-hour supervision.

{¶32} Laidman testified that the Agency does not intend to keep C.N.L. at Caley Home and that she has been actively seeking a specialized therapeutic foster home for him. When the Agency gets custody of C.N.L., Laidman said she could use an additional resource called Wendy's Wonderful Kids to find him a foster home.

{¶33} Laidman relayed that appellant has lived off and on with family members and in women's shelters. Appellant also frequently switched counselors, and as a result, made no progress and was noncompliant with her mental health plan. Appellant also lacked a job and suitable housing. She lives with her mom, but Laidman was unable to

7

inspect the home. On Laidman's attempted home visit, she was chased away and threatened. Laidman also testified that the home appellant lives in with her mom and aunt has a record of police calls for domestic disturbances and physical altercations, which indicates that this is not an acceptable home for C.N.L.

{¶34} Appellant completed general parenting classes, but she also spent time in jail for petty theft. Laidman believes C.N.L. needs a stable home. She also has concerns about appellant making promises to C.N.L. that she cannot keep about buying him a bird and a dog.

{¶35} Appellant testified that she suffers from post-traumatic stress disorder and that she is unemployed. She is working with a job coach to secure employment and lives with her mom and cousin in a rental home. Appellant explained that she frequently switches counselors because she was unable to find a good fit. She was not in therapy at the time of the hearing.

{¶36} She acknowledges she stole food when she was suffering from a diabetic low and has a petty theft conviction as a result. She spent six months in jail. Appellant also does not have custody of her other child, C.N.L.'s sister who lives with a relative. Appellant visits her daughter about once a month.

{¶37} Appellant explained that after the accident that caused C.N.L.'s brain injury, he began having three-hour crying fits and was very difficult to manage. She said he nightly fought taking his ADHD medicine.

{¶38} Appellant denies promising C.N.L. any animals but recalls a conversation about what their favorite dogs are. Appellant visits C.N.L. weekly and calls him about three times a week. She brings him snacks and drinks and tries to bring an activity or

8

craft to engage him. Appellant believes C.N.L.'s health would decline if her parental rights were terminated.

{¶39} The court made the following findings regarding appellant:

{¶40} In the prior case, "Mother was not chosen for reunification because she was not compliant with mental health services. Mother would have lapses of service and frequently changed her service provider; starting over with a new assessment. These issues continue into the present case. Home visits to this residence ceased due to continued threats against the social worker. Monthly visits were instead conducted in other locations. Mother has never successfully completed or made significant progress toward her mental health goal. At the beginning of this case, Mother was not involved in mental health services. She re-engaged in services with Ohio Guidestone. She was unable to progress with mental health services due to being on wait lists and multiple therapists leaving Ohio Guidestone. In June 2019, Mother switched to Murtis Taylor for her mental health and case management needs. Mother has completed a parenting class through Ohio Guidestone.

{¶41} "There was a meeting on July 15, 2019 with Mother's attorney, the Guardian ad Litem and the social worker to discuss the expectations for reunification with [C.N.L.]. Mother was informed that if she was able to show consistency with her mental health services and the ability to separate herself from [her mother], the Department was going to offer Mother a family preservation voucher. Mother was given several months to stabilize herself and to ensure that she was consistent with her service provider and to not switch service providers. On August 16, 2019, the social worker was informed that Mother changed her case manager. Mother left individual therapy with Murtis Taylor and

9

is currently not enrolled in any individual counseling services. Mother continues to live with Maternal Grandmother and currently does not have an income, failing to prove that she can separate herself from Maternal Grandmother and establish housing of her own."

{¶42} In support of its decision that a grant of custody to the Agency is in C.N.L.'s best interest, the court found:

{¶43} "[C.N.L.] needs a stable and permanent home to keep him safe, build positive relationships and consistently provide for all of his mental health and basic needs. [C.N.L.] needs parents that can understand trauma-informed parenting. This type of placement cannot be achieved without permanent custody being awarded to the Department.

{¶44} "There are no appropriate relatives who can care for [C.N.L.] and provide him with a permanent placement. Mother and Father have failed to remedy the situations that brought [C.N.L.] into temporary custody of the Department." The trial court also individually addressed all best interest factors and made findings under each. It concluded in part that it could not place C.N.L. with appellant because she had consistently failed to satisfy her mental health care goals based on her frequently changing therapists. She also lacked suitable housing and income. Appellant could not meet C.N.L.'s significant needs brought on in part by circumstances beyond her control. Its findings are consistent with the record and the evidence presented at the hearing.

{¶45} As for her argument that the court failed to recognize her and the child's father's substantial case plan compliance and progress that warranted a grant of additional time for reunification, the record shows otherwise. A trial court's decision to

grant or deny an extension of temporary custody to the agency is discretionary. *In re M.C.*, 9th Dist. Summit No. 22983, 2006-Ohio-1041, ¶ 21.

{¶46} "'R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for [up to] six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension.' *In re P.B.,* 2006-Ohio-5419, at ¶ 36. *See, also,* R.C. 2151.41.5(D)(1) * * *. Clear and convincing evidence is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985) (quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954))." *In re S.N.*, 9th Dist. Summit No. 23571, 2007-Ohio-2196, ¶ 17.

{¶47} There was a discussion at the end of the hearing about C.N.L.'s parents' progress, yet the court found that neither parent was case plan compliant and neither was currently capable of providing C.N.L. the stable home he needs. Moreover, appellant's argument that she made progress warranting additional time focuses on C.N.L.'s father's compliance and not her own. Contrary to her argument, the court found that appellant had made little progress because she had not secured employment and continued to switched counselors. The evidence supports the trial court's conclusion that appellant made only minimal progress on her case plan, and thus there was no reason to believe that reunification would occur during an extension. Accordingly, the trial court did not abuse its discretion by not extending C.N.L.'s temporary custody. We likewise disagree

11

with appellant's contention that the court focuses too much on the *possibility* of permanent placement. The Agency argued this point in its opening statement and closing arguments and said that if permanent custody is granted to the Agency, then it will have more tools to find C.N.L. a permanent home. While this was not the focus of the trial court's decision, this fact is nevertheless supported by Laidman's testimony.

{¶48} Because the trial court's decision finding a grant of custody to the Agency is supported by clear and convincing evidence and is not against the manifest weight of the evidence, appellant's assigned errors lack merit.

{¶49} The trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.