[Cite as *In re J.C.F.*, 2021-Ohio-1057.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| J.C.F., A.F.F., AND S.W.F., DEPENDENT, NEGLECTED AND ABUSED CHILDREN. | : | **CASE NO. 2020-T-0084** |
| | : | |

Appeal from the Trumbull County Court of Common Pleas, Juvenile Division, Case No. 2017 JC 00040.

Judgment: Affirmed.

*Susan Collins,* Trumbull County Children Services Board, 2282 Reeves Road, N.E., Warren, Ohio 44483 (For Appellee).

*Michael A. Scala*, 244 Seneca Avenue, N.E., P.O. Box 4306, Warren, Ohio 44482 (For Appellant).

*Michael R. Babyak*, 51 East Park Avenue, Niles, Ohio 44446 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Eric Fisher, appeals from the judgment granting permanent custody of his three children to appellee, Trumbull County Children Services Board ("CSB"), and divesting him of his parental rights. We affirm.

{¶2} In 2017, the trial court granted Fisher custody of his three sons: J.C.F., born December 24, 2013, and twins A.F.F. and S.W.F., born April 2, 2015. In 2018, CSB obtained emergency custody of the children, and it then sought temporary custody, alleging dependency, neglect, and abuse. Thereafter, the court granted CSB temporary

custody and adjudicated two of the children as abused and all the children as dependent and neglected.

{¶3} On September 4, 2018, Fisher moved for custody. Thereafter, the trial court granted a six-month extension of temporary custody to CSB. CSB then moved for permanent custody of the children. The trial court set CSB's motion for hearing on August 6, 2019. However, at that hearing, CSB orally moved for an additional six-month extension, which the court granted.

{¶4} The matter of permanent custody came on for three days of trial before the magistrate in January 2020. The matter was set to resume for a fourth and a fifth day of trial, as needed, in March 2020. However, the March trial dates were rescheduled to June 19, 2020 and June 22, 2020 due to the COVID-19 pandemic. After the June hearings concluded, the magistrate issued a decision on July 23, 2020, recommending Fisher's parental rights be terminated and permanent custody of the children be granted to CSB. Fisher filed objections on August 5, 2020. On September 14, 2020, CSB moved to dismiss the objections due to Fisher's failure to request and file a transcript. On September 29, 2020, Fisher requested a transcript of the hearing be prepared at the state's expense. The trial court denied the motion and dismissed the objections because the time for providing a supporting transcript had lapsed. Subsequently, the court entered judgment terminating Fisher's parental rights and granting CSB permanent custody of the children.

{¶5} Fisher assigns three errors, the first of which is:

{¶6} "[1.] The trial court erred, to the detriment of appellant, by failing to review appellant's motions and overruling them on procedural grounds."

2

{¶7} Fisher maintains that the trial court should have exercised its discretion to permit extra time for him to provide a transcript due to COVID-19.

{¶8} With respect to supporting transcripts, Juv.R. 40(D)(3)(b)(iii) provides:

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. *The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause.* If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

(Emphasis added.) "When an objecting party fails to timely file a transcript or affidavit with their objections, a trial court can adopt the magistrate's findings without further consideration, and the objecting party cannot challenge the merits of the factual findings on appeal." (Citation omitted.) *In re D.S.R.*, 11th Dist. Lake Nos. 2011-L-119, 2011-L-130, 2012-Ohio-5823, ¶ 17. In addition, Loc.R. 34.10(B)(4) provides, "Requests for extensions of time to file the transcript shall include the endorsement or affidavit of the Court Reporter indicating the reason that the transcript has not been completed and the expected date of completion."

{¶9} Here, the trial court included a notice with the magistrate's decision specifying an objecting party must contact the court reporter to make arrangements for the transcript and personally pay for the transcript unless the party is eligible for juvenile court appointed counsel. The notice further advises that the objecting party must make "a NEW APPLICATION of indigency, completing and filing the necessary indigency forms along with [the party's] request for state payment of the transcript." (Emphasis sic.)

3

{¶10} Fisher filed his objections on August 5, 2020. At the end of his objections, Fisher requested additional time beyond 30 days to obtain the transcript due to its anticipated length. However, there existed no endorsement by the court reporter as to the expected date of completion or that the court reporter had even received a request for a transcript. Fisher did not file a transcript within the 30-day period provided by Juv.R. 40(D)(3)(b)(iii), he did not request an extension to file the transcript in compliance with Loc.R. 34.10(B)(4), nor did he provide the trial court with an explanation as to the tardiness of his request for state payment of the transcript. Fisher was able to timely file his objections, and he has not demonstrated that COVID-19 interfered with his ability to timely file a transcript or properly request an extension.

{¶11} Therefore, Fisher's first assigned error lacks merit.

{¶12} Fisher's second assigned error states:

{¶13} "[2.] The trial court erred, to the detriment of appellant, by holding trial in this matter over a six-month period."

{¶14} Trial in this case began in January 2020 and concluded in June 2020. Fisher maintains that the six-month gap in hearings rendered evidence taken earlier in the trial irrelevant. However, Fisher does not support his argument with citations to any authority supporting his position that the six-month timespan is improper. *See* App.R. 16 (A)(7) (Appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.").

{¶15} Further, Fisher's objections before the trial court on this issue state that the permanent custody hearing "was so fragmented as to render a proper decision impossible and the Magistrate should have declared a mistrial." Without a transcript, the trial court could not have determined the impact of the trial timeline when ruling on objections. However, as set forth above, Fisher failed to provide a transcript.

{¶16} Therefore, Fisher's second assigned error lacks merit.

{¶17} Fisher's third assigned error provides:

{¶18} "[3.] The trial court erred, to the detriment of appellant, by accepting the magistrate's decision in spite of the findings of fact in the decision."

{¶19} In his third assigned error, Fisher appears to argue that the magistrate's factual findings did not establish clear and convincing evidence that the children's best interests were served through placing them in the permanent custody of CSB. Fisher raised this objection in the trial court, arguing that "[t]he facts as found by the Magistrate are insufficient to grant the motion under the clear and convincing evidence."

{¶20} "We 'will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence.'" *In re C.N.L.*, 11th Dist. Lake No. 2020-L-036, 2020-Ohio-3771, ¶ 12, quoting *In re J.S.E.*, 11th Dist. Portage Nos. 2009-P-0091, 2009-P-0094, 2010-Ohio-2412, ¶ 25.

> The clear and convincing evidence standard requires that the evidence "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. * * * Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. * * * The determination of the [trial] court should

5

not be overturned unless it is unsupported by clear and convincing evidence."

*In re C.N.L.* at ¶ 12, quoting *In re J.S.E.* at ¶ 25.

{¶21} R.C. 2151.414(B)(1) governs permanent custody and provides in pertinent part:

> [T]he court may grant permanent custody of a child to a movant if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
>  * * *
>
> (d) The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *.

{¶22} Here, there is no dispute that the children have been in the custody of CSB for over 12 of 22 consecutive months. Instead, Fisher appears to challenge the trial court's conclusion that permanent custody was in the children's best interests based upon the magistrate's factual findings, which he does not dispute.

{¶23} R.C. 2151.414(D)(1) sets forth the following nonexhaustive list of factors to be considered in determining a child's best interest:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child

6

has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

{¶24} Recently, the Ohio Supreme Court held:

R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors.

*In re A.M.*, --- Ohio St.3d ----, 2020-Ohio-5102, --- N.E.2d ----, ¶ 31. However, "the best practice is for the juvenile court to specifically address each factor. *Id.* at ¶ 32.

{¶25} Accordingly, although Fisher does not dispute the magistrate's specific factual findings, the magistrate was not required to list every finding on which his decision was based. Therefore, a transcript was necessary for the trial court to properly review Fisher's argument, a finding implicitly made by the trial court when it dismissed all of Fisher's objections, including the objection on which this assigned error is based.

7

{¶26} However, the magistrate specifically addressed the best interest factors contained in R.C. 2151.414(D)(1)(a)-(d) and concluded that the factors contained in R.C. 2151.414(E)(7) to (11) were not applicable. Because timely objections were filed without a transcript, "the trial court was required to accept the magistrate's findings of fact and determine the legal conclusions based on those facts." (Citation omitted.) *Dinardo v. Dinardo*, 11th Dist. Lake No. 2016-L-111, 2017-Ohio-4379, ¶ 29. "Our review is likewise limited to whether the trial court correctly applied the law to the facts as set forth by the magistrate." (Citation omitted.) *Id.* at ¶ 30.

{¶27} The magistrate found that all of the boys have special needs, and they have improved physically and mentally with the intense work from their current caregivers. The oldest sibling, J.C.F., has significant physical limitations. He cannot walk, receives food through a g-tube, is partially blind, and is non-verbal. J.C.F. is not in a regular foster home, but he has a paid caregiver, with whom he is bonded. As to the twins, the magistrate found that they engage in sibling rivalry and are aggressive toward each other, and both suffer from night terrors. They are placed with a foster family that keeps the rivalry under control. The twins are developmentally delayed, but they participate in speech therapy and can now make one-word responses. The magistrate noted that the twins are pleased to see Fisher at visits, but they are most strongly bonded with their current foster parents. The twins are in a foster-to-adopt placement; however, the foster parents lack the ability to care for J.C.F. The magistrate noted that J.C.F. would be the most difficult child to find adoptive placement. The magistrate found that the children's young ages improve their adoptability, but this will decrease as they age.

8

{¶28} With respect to the wishes of the children, the magistrate noted that they are not capable of verbally expressing their wishes, but they express themselves physically when separated from other individuals, and they display the strongest physical expressions are when they are separated from their current caregivers. In addition, the magistrate noted that the guardian ad litem recommended permanent custody be granted to CSB.

{¶29} With respect to the custodial history of the children, the magistrate found that they have been in foster care since March 2018, which is a considerable percentage of their young lives.

{¶30} With respect to the need for legally secure placement, the magistrate noted that the parents have demonstrated a lack of commitment to the children. The magistrate found that the parents have not demonstrated their ability to use community services, and specifically with respect to Fisher, the magistrate noted:

> In January 2020 when the permanent custody trial began, father was living with relatives and had no visible means of income and housing from January 2019 until May 2020. He now reports he has income (but no receipts or 1050/W2s for tax year 2019). He reports he has a rental effective May 2020 in a place south of Youngstown. If that is true, he has no justifiable reason for not having disclosed it until the end of the trial in June 2020. The alleged home is in Mahoning County, and Mahoning County CSB would have to do a homestudy. Even assuming he has a home out of county, he still cannot document legal income.

{¶31} Further, the magistrate found that "[n]either of the parents have demonstrated that they can meet the needs and also meet the medical, educational, therapy, and day-to-day needs of the boys." The magistrate indicated, "The current placements have made a positive impact on the children. The twins are in a placement that will adopt them, and continue to work with them to grow their potential. [J.C.F.] is in

9

a service that is making him better, and it is an opportunity for him to find a permanent, legally secure home."

{¶32} Therefore, the magistrate found by the standard of clear and convincing evidence that the children have a need for a legally secure, permanent placement that cannot be achieved without granting CSB permanent custody, and that permanent custody is in the children's best interests. Given the magistrate's findings, the trial court did not err in applying the law and granting CSB's motion.

{¶33} Therefore, Fisher's third assignment of error is without merit.

{¶34} Accordingly, the judgment is affirmed.


MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.